THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS MILLER, Defendant-Appellant.

(No. 73-160; ▮▮▮▮▮▮▮

Fifth District—August 18, 1975.

Paul Bradley and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Bruce D. Irish and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of St. Clair County entered after a jury verdict where defendant was adjudged guilty of the offenses of armed robbery and attempted murder. The defendant received concurrent sentences of 5 to 15 and 8 to 15 years, respectively.

The record discloses that in the early morning hours of January 8, 1972, James Boatwright and his mother-in-law, Viola Parker, drove from St. Louis to East St. Louis to purchase some beer. While Mr. Boatwright went inside a tavern to purchase the beer Mrs. Parker waited in the car with the doors locked. After purchasing the beer and on his way back

to the car. Mr. Boatwright was approached by a man who was holding a gun in the palm of his hand. Boatwright testified that he thought the man wanted to sell the gun. The man with the gun then instructed Boatwright to put his hands up and informed him this was a "stick up." While this first man held the gun on Boatwright another man approached from behind and took Boatwright's billfold and cigarette lighter. The man holding the gun then took Boatwright's watch.

Both men then took Boatwright back to his car where the man with the gun was able to get Mrs. Parker to unlock the doors by threatening to kill Boatwright if she did not. According to Boatwright, one of the men sat in the back seat with him while the other was in the front seat with Mrs. Parker. Once they were all in the car the man in the back seat began striking Boatwright with the pistol. Boatwright struggled with his attacker but was knocked unconscious by one of the men and dragged out of the car. After the men had removed Boatwright out of the car he regained consciousness and struggled with them again. It was at this point that Boatwright was shot four times.

The men left Boatwright next to the car and they took Mrs. Parker with them. After a short walk and ride in another car the men released Mrs. Parker.

According to Boatwright, he observed the robbers for approximately 15 minutes, a portion of which was under fluorescent street lights. On direct examination he testified as to the role played by the defendant in this robbery and shooting, but on cross-examination he admitted he was confused as to the part played by each of the men who participated in the robbery. He was unshaken though in his identification of the defendant in a police lineup, and in addition he identified the defendant in court as one of the men. On cross examination, Boatwright testified further that he had been shown five or six photographs while he was still in the hospital immediately after the incident in question, and although one of the pictures resembled the defendent he could not positively identify him from the photograph. In addition to these identifications of the defendant, Boatwright identified a cigarette lighter recovered from the defendant as the one taken during the robbery.

Mrs. Parker corroborated Boatwright's account of the events, but stated she could not identify either of the men who committed the robbery and shooting because she did not get a good look at them.

The defendant testified on his own behalf that he was home at the time of the robbery and denied any participation in the crime. He testified further that the lighter the police recovered from him was one he had found at a tavern. He produced two witnesses who corroborated his story about the lighter. In rebuttal the State produced a police officer

who testified that when the defendant was asked how he came into possession of the lighter he gave two or three different stories.

The first issue raised on appeal is whether the identification of the defendant was proven beyond a reasonable doubt. The defendant claims that Mr. Boatwright's identification was vague, doubtful and uncertain because of the following reasons: (1) he had a limited opportunity to view the robbers; (2) he could not positively identify the defendant from the photographs shown to him in the hospital; (3) Mrs. Parker, who the defendant claims had a better opportunity to view the robbers, could not identify the defendant; and (4) Boatwright's confusion on which part the defendant played in this whole event.

■■ We are convinced the identification of the defendant was proven beyond a reasonable doubt. Although there is a rule in Illinois that a conviction cannot be sustained beyond a reasonable doubt where the identification of the defendant is vague, doubtful and uncertain (*People v. Cullotta*, 32 Ill.2d 502), there is also a well-established rule that the testimony of one witness is sufficient to convict. The latter rule is true even though such testimony is contradicted by the accused, provided however that the witness is credible and viewed the accused under circumstances which would permit a positive identification to be made. (*People v. Catlett*, 48 Ill.2d 56; *People v. Brinkley*, 33 Ill.2d 403.) Mr. Boatwright testified that he observed the defendant for approximately 15 minutes, a portion of which was under good lighting. It was therefore reasonable for the jury to find his identification was credible and that the circumstances were such as to permit a positive identification.

Mr. Boatwright's failure to positively identify the defendant from a photograph is of little consequence. In *People v. Woods*, 114 Ill.App.2d 348, the defendant claimed his identification was not proved beyond reasonable doubt because the witness failed to identify him from a photograph, prior to a lineup. The court concluded the failure to identify the defendant from his photograph would not have a substantial adverse effect on the credibility of a subsequent positive identification at a lineup. The court in *Woods* based its conclusion on the premise that a photograph may not have accurately portrayed the defendant and "an identification ordinarily is based upon animate observation of a defendant in his entirety, rather than an inanimate portrayal of his face." Mr. Boatwright's subsequent lineup and in-court identifications would mitigate any failure to identify positively the defendant from a photograph.

The fact Mrs. Parker could not identify the defendant as one of the robbers only went to the weight of the evidence and the credibility of the witnesses, which is within the province of the jury to determine and

not this court to review. A jury's verdict should not be set aside unless the evidence is so unsatisfactory as to raise a reasonable doubt of guilt. (*People v. Prince*, 1 Ill.App.3d 853.) In *Prince* two men were robbed, one of them positively identified the defendant at a lineup and in court while the other victim could make no identification. In the instant case, although Mrs. Parker had a longer time within which to observe the defendant there was evidence that she was screaming and frightened. From these facts the jury could reasonably have inferred that her mental state was such as to preclude her from making a good identification. On the other hand it was within the jury's province to believe Mr. Boatwright's positive identification of the defendant as one of the robbers. As mentioned previously one credible witness is sufficient to convict.

Whether or not Mr. Boatwright was sure of the role taken by the defendant in the robbery and shooting was another point which went to the witness's credibility and the weight to be given his testimony. It was within the province of the jury to judge what affect this confusion would have on Boatwright's credibility and the weight of the evidence. It would not have been at all unreasonable for the jury to find that Boatwright could identify his assailants while at the same time be confused as to the roles played by them. In light of the severe beating and shooting it is understandable that he might be confused, but it does not make the identification testimony so unsatisfactory as to create a reasonable doubt of guilt.

■■ The fact Mr. Boatwright could not definitively say what role the defendant played in this event did not render the evidence of guilt insufficient because Boatwright testified the defendant was an active participant in the crime. It is the law in Illinois that "[a] person is legally accountable for the conduct of another when:   *   *   *   (c) Either before or during the commission of an offense, and with intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1971, ch. 38, § 5—2.) There was ample evidence produced for the jury to conclude the defendant was a knowing participant in the crime and was therefore responsible for everything which transpired whether or not he actually did them. See *People v. Dickens*, 19 Ill.App.3d 419.

The defendant contends next the prosecutor's opening statement, in which he mentioned the defendant's arrest on an "unrelated charge" was prejudicial and grounds for reversal. This remark was made while the prosecutor was describing the circumstances under which the defendant was discovered to be in possession of Mr. Boatwright's lighter. The de-

fense counsel objected and asked a mistrial be declared, but the trial court overruled the motion for mistrial.

■■ The general rule is that evidence of other crimes is inadmissible and is usually sufficiently prejudicial to constitute reversible error. *People v. Spencer*, 7 Ill.App.3d 1017.) The State though directs the court's attention to the exception to this rule, that "evidence of other crimes is admissible if such evidence is relevant to an issue material to the case." (*People v. Bassett*, 56 Ill.2d 285, 294.) Although the defendant's possession of Boatwright's lighter was highly probative on the issue of the defendant's participation in the crime, it was improper for the prosecutor to mention that it was discovered when the defendant was arrested on a "completely unrelated charge." The defendant's arrest on another charge was not probative of any issue in the instant case.

Although this statement was improper, we find it was harmless error and not grounds for reversal. The standard for determining what is harmless error where evidence of other offenses has been improperly mentioned was set forth in *People v. Jordan*, 18 Ill.App.3d 133. The standard cited in *Jordan* was whether the statement so prejudiced the rights of the defendant that he did not receive a fair trial. When considering whether the defendant received a fair trial it is necessary to judge the prejudicial effect of such a statement in light of the evidence which established the defendant's guilt. In *Jordan* the court said:

> "When the competent evidence shows beyond all reasonable doubt that a defendant is guilty, an error in the admission of the evidence of other offenses does not call for reversal, when as here the jury could not have reasonably found the defendant not guilty." (18 Ill.App.3d 133, 136.)

In light of the substantial evidence against the defendant, *i.e.*, the positive identification and his possession of the lighter, we cannot conclude the mentioning of the defendant's arrest on an unrelated charge was so prejudicial as to preclude a fair trial.

We concluded this was harmless error because it was an isolated remark which may or may not have been made with an intention to influence the jury. In addition the defendant took the stand which gave the jury an opportunity to form a first-hand impression of the defendant. In the instant case the prosecutor's remark was isolated and was not elaborated upon by mentioning the reasons for the defendant's arrest. We are more concerned with the effect of this statement, which we have concluded was harmless error, rather than who made the remark. There is also no evidence that the prosecutor made this remark with an intent to influence the jury as he neither continued to emphasize it nor did he remark on the circumstances of the arrest.

The defendant directs the court's attention to the case of *People v. Jenkins*, 10 Ill.App.3d 166, where a policeman testified that he drew his gun while arresting the defendant on an unrelated charge. The defendant contends the court in *Jenkins* reversed because of the testimony about the arrest on an unrelated charge. The court in *Jenkins* though, makes a point of saying the State could have introduced evidence about the defendant's arrest, but it was prejudicial for the officer to mention the part about drawing his revolver. According to the court the part about the revolver carried with it a prejudicial inference that the defendant was arrested for a serious offense. It is our opinion the use of the term "unrelated charge" in the instant case was sufficiently neutral when made during the opening statement and not elaborated upon further as to constitute only harmless error.

■■ The defendant's final claim is that the trial court erred in denying his motion to suppress identification testimony without a hearing, and in failing to make findings of fact or conclusion of law. The defendant contended in his motion to suppress that the lineup identification was improper because of a prior suggestive photographic identification made while Mr. Boatwright was still in the hospital. The defendant now claims this suggestive photographic identification affected Boatwright's in-court identification as well.

Under certain circumstances, a defendant is entitled to a full and fair pretrial hearing on a motion to suppress identification testimony. *People v. Robinson*, 46 Ill.2d 229. The failure to conduct such a hearing, or an erroneous ruling in the hearing, may constitute harmless error where it is apparent from the record that there was an independent basis for the identification. (*People v. Bentley*, 11 Ill.App.3d 686; *People v. Nudo*, 131 Ill.App.2d 930.) The trial court in the instant case did hold a hearing on the defendant's motion to suppress and denied the motion. The defendant in his motion for a new trial did not argue or even suggest that he was not allowed to present evidence. Defendant orally argued his motion and stated in his argument for a new trial that his motion to suppress was fully explanatory.

Assuming *arguendo* that the defendant is correct in saying the hearing was inadequate, we conclude that at most it was harmless error. The defendant's claim fails because there is sufficient evidence within the record to show an independent basis for Mr. Boatwright's identification. (See *Bently*.) Boatwright had an opportunity to observe the defendant for a total of 15 minutes, a part of which was under fluorescent street lights. We conclude these circumstances were sufficient to show an independent origin for the identification testimony outside of a possibly suggestive photographic identifiation. The Supreme Court of Illinois

has stated that "the existence of an independent origin will validate an in-court identification even though a previous identification procedure may have been improperly suggestive. [Citations.]" (*People v. Connolly*, 55 Ill.2d 421, 427.) Therefore even if the defendant was correct in his contention that the hearing was inadequate and the prior photographic identification was suggestive, these would only constitute harmless errors because of the independent origin for the identification.

Although it would have been preferable for the trial court to have given a reason for its ruling, its absence does not require reversal. As stated above, the record shows an independent origin for the identification testimony, which in turn is sufficient to sustain the trial court's ruling to dismiss the defendant's motion to suppress.

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is hereby affirmed.

Judgment affirmed.

JONES, P. J., and G. MORAN, J., concur.