(No. 48710.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. LEON BERG *et al.*, Appellees.

*Opinion filed June 1, 1977.*

UNDERWOOD and DOOLEY, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and

Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Albert Brooks Friedman, Ltd., of Chicago, for appellees Leon Berg and Burton B. Levitz.

James J. Doherty, Public Defender, of Chicago (Dennis E. Urban, Richard D. Kharas, and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellees Larnell Lowery and James Smith.

MR. JUSTICE MORAN delivered the opinion of the court:

Defendants, Larnell Lowery, James Smith, Leon Berg and Burton B. Levitz, were charged with the theft of 61 water meters. An order of the Cook County circuit court, affirmed by the First District Appellate Court (39 Ill. App. 3d 455), suppressed certain evidence (water meters) as the product of an illegal prearrest search, and quashed Lowery's resulting arrest for lack of probable cause. The complaints against Smith, Berg and Levitz assertedly grew out of this suppressed evidence. This appeal concerns only the circumstances of the arrest of Lowery (hereinafter defendant).

The motion to suppress was granted after a pretrial hearing at which the arresting officer presented the only evidence. His testimony revealed that at approximately 6 a.m. on November 4, 1974, while in uniform and in a marked police car, he observed defendant in front of 2203 South Trumbull with a leather shopping bag and a baby carriage which had left a trail of water extending back to the 2300 block of South Trumbull. The carriage contained an army duffel bag, and the wheels of the buggy were bent as if overburdened. As the officer watched, the defendant placed the leather bag on the sidewalk next to the baby carriage and walked northward. The officer approached

defendant and questioned him. (See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) Defendant stated that he lived six to eight blocks away and was on his way to catch a bus to work. The officer stated that defendant could not, however, identify the block on which they stood or account for his presence there. Finding defendant's answers unsatisfactory, the officer walked over to the baby carriage and "observed" that the leather shopping bag and the duffel bag contained water meters. He asked defendant where he had obtained them, and defendant refused to answer, whereupon the officer placed him under arrest.

At the hearing on the motion to suppress, defense counsel asked the officer if, at the time he first observed defendant, Lowery was committing a crime. The answer was "no." Counsel then asked, "*** at the time you stopped him you didn't know what was in that shopping bag or in that duffel bag?" The officer replied, "No, sir, not until I *examined* it." (Emphasis added.) The defense rested. The State repeatedly attempted to elicit from the officer the specific circumstances surrounding his "observation" of the water meters, but because defense counsel's objections were sustained, it was prevented from doing so. The court concluded that there had been an illegal search, suppressed the evidence, and held that the other events prior to defendant's arrest did not provide probable cause for the arrest. Any evidence gained from defendant after the illegal arrest was said to have flowed from that illegal arrest and to be inadmissible as "fruit of the poisonous tree."

Affirming the trial court's order, the appellate court held that the burden of proving an illegal search and seizure—imposed by statute upon a defendant moving to suppress evidence—was met when the defendant made a *prima facie* showing that the police had no warrant, the defendant was not seen committing a crime when stopped, and the officer was not aware of any crime having been

committed. The court went on to hold that once the defendant had made this *prima facie* case, the burden of proof shifted to the State; that there was ample evidence to sustain the trial court's finding of a search; and that there was an absence of evidence to indicate the water meters were in plain view.

It is the State's position that the record does not support the finding of a search, or that, in the alternative, it reveals the subject property was abandoned. Because of our disposition of the first issue we do not address the question of abandonment.

Section 114—12(b) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 114—12(b)) provides in pertinent part that "The judge shall receive evidence on any issue of fact necessary to determine the motion and the burden of proving that the search and seizure were unlawful shall be on the defendant." The defendant concedes that the above provision requires a defendant who urges the suppression of illegally obtained evidence to make a *prima facie* showing that it was obtained by an illegal search and seizure. (See *People v. Black* (1972), 52 Ill. 2d 544, 554.) Clearly, a *prima facie* showing means that the defendant has the primary responsibility for establishing the factual and legal bases for the motion to suppress. Where the basis for the motion is an allegedly illegal search, it is incumbent upon the defendant in the first instance to establish both components: that there was a search, and that it was illegal. We do not reach the second of these components because of the condition of the record.

A "search" has been defined recurrently by the court as a prying into hidden places for that which is concealed. Conversely, it is not a search to observe that which is in open view. *People v. Sylvester* (1969), 43 Ill. 2d 325, 327; *People v. Davis* (1965), 33 Ill. 2d 134, 138.

In the instant case, the defendant did not testify to events which would have constituted a search; the sole

evidence presented was the testimony of the arresting officer. His testimony reveals only that he "observed" the water meters which were not evident to him until he "examined" the leather shopping bag and the baby carriage. Clearly, the word "observed" alone implies no search. The word "examined" is variously defined as "to inspect or observe carefully; to look into the state of; to view in all aspects in order to find out the facts, physical condition, etc. of; to scrutinize; to investigate; to inquire into ***" (Webster's New Twentieth Century Dictionary (2d ed. 1965)), or "1(a): to inspect closely (b): to test the condition of (c): to inquire into carefully" (Webster's Seventh New Collegiate Dictionary (1967)). Thus, the word "examine" is consistent with a "search" for, or the mere "observation" of, the water meters. It cannot be determined from this language or any part of the record whether or not the officer viewed the contents by unsealing, opening, or otherwise prying into a concealed place. In fact, the very questions designed to elicit this information were objected to by defense counsel, and the objections were sustained by the trial court. Upon the State's initial attempt to permit the officer to clarify the import of his testimony, the following colloquy took place:

> "THE COURT: He has no right to go inside of it. That is what counsel is seeking to suppress.
>
> [PROSECUTOR]: * * *
>
> THE COURT: *** The motion to suppress is to suppress the search of those items.
>
> [PROSECUTOR]: It wasn't a search, your Honor.
>
> THE COURT: It was not a search? Opening up the bags and looking through them?
>
> [PROSECUTOR]: It's not a question of opening it up, Judge. It's in plain view. The officer doesn't have to shut his eyes, does he?

The trial court's inference that the officer opened the bags and looked through them was unfounded. The record is devoid of any evidence to substantiate such conclusion.

The State attempted twice more to clarify the circumstances under which the bags' contents were observed, asking the officer, "[W]hen you observed these items, where were they physically?" Objection by the defendant was sustained by the court. The State then attempted to explain the circumstances by inquiring, "The shopping bag, Officer, was it in a sealed condition when you first saw it?" but it was again precluded from doing so when the court sustained defendant's objection to the question.

It was the State's position that the water meters were in plain view when the officer first observed them. Since the defendant did not testify that a search in fact occurred, it was crucial that circumstances leading to the discovery of the water meters be established. Because the court did not allow the officer to respond to the questions, the record before us fails to disclose whether the meters were within plain view in open bags or were sealed within the bags.

For the reasons stated, the judgments of the appellate court and the circuit court of Cook County are vacated, and the cause is remanded to the circuit court with directions to conduct further evidentiary hearings.

*Vacated and remanded,*
*with directions.*

MR. JUSTICE UNDERWOOD, dissenting:

I do not agree that a further hearing or additional evidence is necessary on the motion to suppress the water meters. As the majority states, the defendant bore the burden of establishing that the water meters were illegally seized. He failed to do so in my judgment, since the evidence may fairly be interpreted as indicating the meters were in plain view of the officer when he looked at the buggy. When the assistant State's Attorney sought to more clearly establish that fact by questioning the officer, the

defendant's objections were sustained by the trial judge. The judge's rulings were, of course, patently erroneous. That error, however, was induced by the defendant, and I believe the interests of justice are not well served by rewarding his failure to meet his burden of proof by remanding for a second hearing.

There is an additional reason supporting the conclusion that further evidence is not needed. When defendant saw the marked squad car and approaching officer, he placed his bag beside the buggy and walked an undisclosed distance away from them. That action, in my judgment, may well have constituted an abandonment of the bag and buggy, rendering the subsequent seizure proper and the evidence admissible. (*People v. Brasfield* (1963), 28 Ill. 2d 518, 520.) If, however, the undisclosed distance between defendant and the buggy on this public sidewalk was so short as not to constitute an abandonment, and to bring the buggy "within his immediate control," a search as incident to an arrest may well have been permissible. (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034.) I emphasize again the defendant's obligation to establish the unreasonableness of the search, and his failure to do so by evidence proving only that the officer arrested defendant without a warrant.

Finally, I am troubled by the court's insistence that something more than the evidence before us is necessary in order to justify a search incident to defendant's arrest, if, in fact, a search of the buggy or bag occurred. It seems to me clear that to require a search warrant in the circumstances of this case, even assuming the water meters were neither abandoned nor in plain view, is simply not a reasoned judgment. As the majority opinion indicates, the uniformed officer in a marked squad car observed defendant, at dawn, with a leather shopping bag and baby carriage which left a trail of water extending nearly a block behind it. The carriage wheels were bent, indicating the buggy was overburdened. The buggy and bag were aban-

doned on the sidewalk by defendant when he saw the officer approaching. The majority agrees the officer was entitled to stop and question him as the officer did. The answers were rather clearly unsatisfactory. It seems to me that at this point the officer has eminently reasonable grounds and probable cause to believe defendant has committed a crime, the fruits or evidence of which are in the buggy and bag. In these circumstances, our statutes and both Federal and State case law permit an arrest and incidental search. (Ill. Rev. Stat. 1973, ch. 38, par. 107—2(c); *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034; *People v. Robinson* (1976), 62 Ill. 2d 273.) Indeed, in my judgment, the officer would have been derelict in his duty had he done otherwise.

The language from *People v. Clay* (1973), 55 Ill. 2d 501, 504-05, quoted in *People v. Robinson* (1976), 62 Ill. 2d 273, 276-77, is particularly apposite here: "Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. [Citations.] In deciding the question of probable cause in a particular case the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. [Citations.]" Similarly, "it is proper to recognize in judging whether there was probable cause that '[p]olice officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals.' *People v. Watkins,* 19 Ill. 2d 11, 19." 62 Ill. 2d 273, 277.

In my opinion, defendant has not established that a search of the bag or buggy occurred. If a search did actually occur, it was not an unreasonable one. I would

accordingly deny the motion to suppress and remand for trial.

MR. JUSTICE DOOLEY, also dissenting:

In my opinion the motion to suppress should have been denied. I agree with Mr. Justice Underwood that it would be idle to remand this matter for further hearing, particularly in view of defendant's obstructiveness which interfered with the orderly procedure on a motion of this character. The remand order should be for a trial on the merits.

The facts admit no other conclusion other than reasonable cause for an examination of the contents of the baby carriage. Here in a high crime neighborhood—a very important fact to be considered on a motion of this character (*People v. Robinson* (1976), 62 Ill. 2d 273, 274-75)—we have the baby carriage on the street at 6 a.m. Its wheels are bent, apparently from overloading. It has left a trail of water in its wake almost a city block in length. It is being pushed by a man with a leather bag. When a policeman in uniform approaches, the defendant places the leather bag on the public sidewalk next to the baby carriage and walks north on the north-south street for an undetermined distance.

When the police officer properly questioned the man, he stated he lived six to eight blocks away and was on his way to work. He could not identify his own location or account for his presence. The police officer then walked to the baby carriage and "observed"—a word in common usage with no hidden meaning—that both the leather bag and the duffel bag within the carriage contained water meters.

When the defendant refused to answer the officer's query concerning where the water meters had been obtained, the officer arrested him.

The officer had probable cause for his action. It was a judgment which had to be made under the realities of the

situation—not in the cloister of this court. Certainly he was not required to act as a naif or an innocent and regard the baby carriage and the leather bag as if they had labels "Do not open until Christmas." The probable cause factor developed on the scene. So long as the totality of the circumstances justifies the officer's conduct, we cannot second-guess the man on the street charged with the responsibility of protecting the public. *People v. Clay* (1973), 55 Ill. 2d 501, 504.

If the officer did conduct his search—and as has been noted the record is silent on this point, although the burden was defendant's—it was reasonable under the circumstances. Certainly he was not required to get a search warrant. The fourth amendment provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

It is well established that there is a constitutional difference between automobiles and houses or offices. (See *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092; *Cady v. Dombrowski* (1973), 413 U.S. 433, 37 L. Ed. 2d 706, 93 S. Ct. 2523; *Cooper v. California* (1967), 386 U.S. 58, 59, 17 L. Ed. 2d 730, 732, 87 S. Ct. 788, 790.) This area of the law has been described as "something less than a seamless web." *Cady v. Dombrowski* (1973), 413 U.S. 433, 440, 37 L. Ed. 2d 706, 714, 93 S. Ct. 2523, 2527 (Rehnquist, J.).

In *South Dakota v. Opperman* (1976), 428 U.S. 364, 49 L. Ed. 2d 1000, 96 S. Ct. 3092, a car was towed away for overtime parking. At the impound lot an officer noted items of personal property within the car. He directed the automobile to be unlocked and an inventory taken of the personal property within the car. In so doing he unlocked the glove compartment, where he found marijuana. The

defendant's motion to suppress was denied, and he was convicted. South Dakota's Supreme Court reversed the judgment on the basis that the incriminating evidence had been obtained by violating the fourteenth amendment prohibiting unreasonable searches and seizures.

In a reversing opinion the United States Supreme Court pointed out the difference between automobiles and homes or offices. Automobiles have an inherent mobility. Automobiles are subject to local governmental regulations, including inspection and licensing requirements. The expectation of privacy diminishes because of its function as transportation.

In *Cady v. Dombrowski* (1973), 413 U.S. 433, 37 L. Ed. 2d 706, 93 S. Ct. 2523, a Chicago off-duty police officer had an accident in Wisconsin while driving a rented car. Wisconsin police believed Chicago police officers were required to carry a service pistol at all times. Upon finding no revolver on the person of respondent, who was confined to a hospital in an injured condition, one of the police officers returned to the garage where the car had been towed after the accident to look for it. He found within the car a flashlight with "a few spots of blood on it." He opened the locked trunk and found two pairs of trousers, a night stick, raincoat, part of a floor mat, and a towel, all covered with blood.

When respondent was confronted with these matters later in the day, he desired the presence of counsel. In the subsequent murder trial these items were introduced into evidence, and respondent was convicted—a judgment affirmed by the United States Supreme Court.

While it is true that a baby carriage is not subject to local governmental regulations as an automobile, nonetheless at least this one had an "inherent mobility." There was likewise a diminution in the expectation of privacy because of the baby carriage's function on the public street as a transporter of property. These are among the principal reasons for classifying automobiles differently from houses

or offices. I believe that the baby carriage under these circumstances had no more sanctity than an automobile.

Even if there had been a search here, certainly reasonableness justified it. Neither the Illinois Constitution, article I, section 6, nor the fourth amendment to the Constitution of the United States guards against all searches, but only against unreasonable searches. Such, after all, is the test as Mr. Justice Black, a staunch defender of constitutional rights, observed in *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 509-10, 29 L. Ed. 2d 564, 608, 91 S. Ct. 2022, 2059:

> "[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It prohibits only *'unreasonable* searches and seizures.' The relevant test *is not the reasonableness of the opportunity to procure a warrant,* but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts." (Emphasis supplied.)

Lastly, the abandonment of both baby carriage and bag on a public street by the defendant upon the approach of the police officer in itself would have justified the search under the circumstances. (*People v. Brasfield* (1963), 28 Ill. 2d 518, 520.) The contents of the baby carriage could have run the whole gauntlet from an infant in distress to the products of crime.

I would deny the motion to suppress, and remand the cause for trial without further hearing on this motion.