THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SAMUEL SUTHERLAND, Defendant-Appellant.

First District (5th Division)    No. 79-1528

Opinion filed December 31, 1980.

James J. Doherty, Public Defender, of Chicago (Timothy K. McMorrow and Marc Fogelberg, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Christine A. Campbell, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted and given concurrent sentences as follows: For murder, 40 to 90 years; for attempted murder, 15 to 30 years; and for each of six counts of armed robbery, 10 to 20 years. On appeal, issues are raised as to whether (1) the warrantless seizure of defendant's clothes violated the constitutional prohibition against unreasonable searches and seizures; and (2) the court erred in refusing to hear witnesses at the hearing on the motion to suppress identification testimony.

In the course of a shooting during the robbery of a gambling house by four armed men, one of the patrons was killed and another wounded. One of the offenders also was wounded, and a short time later defendant was admitted to a hospital for treatment of a gunshot wound. Defendant's clothes were removed at the hospital, and a security guard testified that they were placed in a plastic bag which he put under his desk. Subsequently, police officers, without obtaining a search warrant, obtained and photographed the clothes.

Prior to trial, at a hearing on defendant's "motion to suppress evidence illegally seized," defendant testified that he did not know what

happened to his clothes after they had been taken from him at the hospital. John Horton, one of three hospital security guards on duty that evening, stated that he had placed the bag containing defendant's clothing under his desk and did not give anyone permission to remove the bag. He admitted, however, that on prior occasions he had given police officers the clothing of gunshot victims.

Officer Solicki testified that during his investigation he learned that one of the offenders had been wounded by a .30-caliber carbine bullet; that he had been given a description of the wounded offender and of the clothes worn by him; that he was told the wounded offender had a blackjack in his rear pocket; that at the hospital defendant gave two conflicting versions of the events surrounding his gunshot wound; that after he viewed defendant's X rays, which indicated that defendant was shot by a .30-caliber bullet, he inquired as to the whereabouts of defendant's clothes; that a security guard gave him the bag containing defendant's clothes; that it was the usual practice for police to inventory gunshot victims' clothing; and that he was informed the security guard was a cousin of defendant. The court denied the motion to suppress the evidence without making any findings of fact.

Defendant had also made a motion to suppress identification testimony, which the trial court denied without conducting an evidentiary hearing.

The evidence at trial relevant to the issues raised was as follows: Charles Eiland, doorman at the gambling house, testified for the State that a patron known to him as the "man with the plaid suit" (later identified by him as defendant) left the gambling house at about 10 p.m. and then buzzed the doorbell a few minutes later; that when he opened the door defendant put a gun to his head and three other men wearing gas masks also entered; that defendant forced him and other patrons into a basement room, where they were lined up against the wall and searched; that his wallet, ring, and money were taken from him; that defendant left to answer the front door buzzer and he (Eiland) heard two shots and later saw that Elmer Payton had been killed and a man he knew as "Dino" was wounded; that he had seen defendant at the gambling house several times during the preceding six months; and that he was shown pictures of defendant and his clothes by the police on the evening of the shooting.

Archie Rowe, Larry Ware, Hezie Green, Eugene Parker, and Hosea Green each testified for the State that they were in the gambling house when four men carrying guns entered the premises; that three of the men were wearing gas masks; that the armed men ordered them against the wall and took various items of value, including money, from them; and

that after several gunshots were fired, the robbers left. Both Rowe and Ware stated that "Dino" and Elmer Payton had been shot, and they identified defendant as the offender who was not wearing a gas mask. There was additional testimony by Rowe that he had seen defendant in the gambling house on other occasions and that, after the offenders left, he saw three people help a fourth person get into a white panel van. Ware also stated that defendant pointed a gun at his head and took $340 from his (Ware's) pockets; and that he was shown a picture of defendant and his clothing prior to identifying him.

Kenneth Prothro, also known as "Dino," testified for the State that he buzzed the doorbell to obtain entry to the gambling house and, when the door was opened, defendant hit him on the head with a pistol; that when he (Prothro) grabbed the pistol, defendant shot him twice, after which defendant said, "Die mother-f⎯ker," and shot him two more times; that he then heard one of the offenders say, "Number Two has been shot," following which two of the men carried defendant out of the building; that he had seen defendant in the gambling house and in the neighborhood on previous occasions; and that defendant often wore a plaid suit.

Sheila Merriweather and John McCall, employees of a funeral home located on the same block as the gambling house, testified that they observed a light-colored van strike two parked cars as it sped away after the robbery.

Police officer Thompson testified that on the day after the occurrence, pursuant to information he received in his investigation, he went to a particular address where he observed a white van in the driveway matching the description of the vehicle used by the offenders in the robbery; that after he saw bloodstains on the front seat of the car, he entered the unlocked front door of the building at that address and went upstairs to the office of Youth Ex-Offenders Service where a search of this office revealed watches, wallets, guns, bullets, gas masks, and the identification cards of some of the gambling house robbery victims.

Officer Solicki testified that he recovered defendant's clothing from the hospital, including a pink shirt and plaid pants; and that he found 14 .38-caliber cartridges and a blackjack in the pockets. There was testimony from another officer that a fingerprint from the white van was that of defendant and testimony from a medical examiner that Eddie Payton died from a chest bullet wound.

Defendant testified that on the evening in question he was robbed by two men who, after taking his briefcase and pocket change, shot him in the stomach; that he was taken to the hospital by some passersby; and that he was then in the employ of Youth Ex-Offenders Services as a consultant and counselor.

OPINION

The first issue presented is whether the trial court properly denied defendant's motion to suppress evidence (his clothing) seized without a warrant from the hospital while he was under treatment for a gunshot wound.

In determining whether the challenged police action offends the fourth amendment, we must decide whether defendant had a "reasonable expectation of privacy" with regard to his clothes. (*United States v. Dionisio* (1973), 410 U.S. 1, 8, 35 L. Ed. 2d 67, 76, 93 S. Ct. 764, 769; *Terry v. Ohio* (1968), 392 U.S. 1, 9, 20 L. Ed. 2d 889, 899, 88 S. Ct. 1868, 1873.) As stated in *Katz v. United States* (1967), 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511, "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [Citations.] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." Such an expectation must be "legitimate" to be protected. (*Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 62 L. Ed. 2d 238, 245, 100 S. Ct. 338, 342; *Rakas v. Illinois* (1978), 439 U.S. 128, 143, 58 L. Ed. 2d 387, 401, 99 S. Ct. 421, 430; *United States v. Miller* (1976), 425 U.S. 435, 442, 48 L. Ed. 2d 71, 79, 96 S. Ct. 1619, 1623.)

> "This inquiry, as Mr. Justice Harlan aptly noted in his *Katz* concurrence, normally embraces two discrete questions. The first is whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy,' [citation]—whether, in the words of the *Katz* majority, the individual has shown that 'he seeks to preserve [something] as private.' [Citation.] The second question is whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable," ' [citation]—whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is 'justifiable' under the circumstances." *Smith v. Maryland* (1979), 442 U.S. 735, 740, 61 L. Ed. 2d 220, 226-27, 99 S. Ct. 2577, 2580.

■■ The proponent of a motion to suppress has the burden of establishing that his fourth amendment rights were violated by the challenged search or seizure. (*Rakas v. Illinois*; *People v. Berg* (1977), 67 Ill. 2d 65, 364 N.E.2d 880.) More succinctly stated, defendant bears the burden of proving that he had a legitimate expectation of privacy as to the items examined by the police. *Rawlings v. Kentucky* (1980), ___ U.S. ___, 65 L. Ed. 2d 633, 100 S. Ct. 2556.

■■ Here, there is nothing in the record showing that defendant asked or even indicated that when his clothing was removed at the hospital it was not to be given to anyone else, or that he otherwise demonstrated an actual intent to preserve the privacy of his apparel. Moreover, in view of

the testimony of Officer Solicki that it was a common practice for police to inventory the clothing of gunshot wound victims and the testimony of the security guard that in the past he had given the clothing of such victims to the police, it appears that any subjective expectation of privacy was not of the type "that society is prepared to recognize as reasonable" or that it was "justifiable under the circumstances." (See *Smith v. Maryland.*) Furthermore, we see no merit in defendant's argument that the means by which the police acquired his clothes were illegal because the security guard (Horton) did not give them permission to obtain or inspect the clothes. Officer Solicki testified that after he inquired as to the whereabouts of the clothing, an unknown security guard gave him the bag containing the clothes. Although security guard Horton denied doing so and also said that he did not authorize anyone else to do so, we note that he was only one of three guards on duty at that time, and there is nothing in the record to negate the fact that one of the other guards may have given the bag to the police. Considering the totality of the circumstances, we believe the record justifies the trial court's implicit conclusion that the police obtained defendant's clothing in a lawful manner.

In any event, even if there had been an illegal seizure, we believe that defendant was not prejudiced thereby. He asserts, "The prejudice in the admission of evidence of this seizure was extreme. Every witness who claimed to know the defendant stated that he usually wore a plaid suit; and several of them knew him as 'the man in the plaid suit.' " It is well settled, however, that where there is other competent evidence which establishes defendant's guilt beyond a reasonable doubt and it does not appear that the error complained of contributed to the jury's verdict of guilty, it is harmless and reversal is not required. (*People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290; *People v. Butler* (1978), 63 Ill. App. 3d 132, 379 N.E.2d 703.) In this case, five victims of the robbery (four of whom had seen defendant on prior occasions) positively identified defendant as one of the offenders. Their testimony was further bolstered by the physical evidence as well as the testimony of Officer Thompson that at defendant's place of employment he discovered watches, wallets, guns, gas masks, and the identification cards of some of the victims. Thus, the fact that the jury was apprised that the clothing recovered at the hospital included plaid trousers[1] merely corroborated other testimony and did not appear to contribute to the jury's verdict.

Defendant's final contention is that he was prejudiced by the court's refusal to grant him an evidentiary hearing on his motion to suppress identification testimony which alleged, in pertinent part, that "the identifi-

---

[1] The record discloses that photographs of the clothing were admitted into evidence, and Officer Solicki gave descriptions of the clothes in his trial testimony.

cation by the identification witnesses was induced by the activities of the police. Since only one photograph was shown to witnesses. [*Sic*]" After reviewing police reports and statements of the witnesses, the court denied defendant's motion to suppress on the basis that "the identification * * * was not the result of any suggestion on the part of the photographs."

There is no question that a defendant is entitled to a full and fair pretrial hearing on a motion to suppress identification testimony. *People v. Robinson* (1970), 46 Ill. 2d 229, 263 N.E.2d 57; *People v. Green* (1976), 42 Ill. App. 3d 978, 356 N.E.2d 947; *People v. Bentley* (1973), 11 Ill. App. 3d 686, 297 N.E.2d 282.

■■ However, we view the failure to conduct such a hearing here as harmless error, since it is apparent from the record that there was an independent basis for the identification. (See *People v. Seets* (1976), 37 Ill. App. 3d 369, 346 N.E.2d 61; *People v. Miller* (1975), 31 Ill. App. 3d 115, 333 N.E.2d 264; *People v. Nudo* (1971), 131 Ill. App. 2d 930, 268 N.E.2d 894.) Positive identifications were made by Charles Eiland, Archie Rowe, and Kenneth Prothro, each of whom had seen defendant on occasions prior to the robbery and shooting. Charles Ware also made a positive identification on the basis of his close range observation of defendant during the robbery, at which time defendant pointed a gun at his head and took $340 from his (Ware's) pockets. We conclude that a sufficient independent origin existed for the identifications and that, consequently, defendant was not prejudiced by the court's denial of an evidentiary hearing on his motion to suppress.

In accord with the foregoing, we affirm the convictions of defendant.

Affirmed.

LORENZ and MEJDA, JJ., concur.