THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RON D. TYLER, Defendant-Appellee.

Fifth District   No. 5—89—0616

Opinion filed March 14, 1991.

Paul Phillips, State's Attorney, of Effingham (Kenneth R. Boyle, Stephen E. Norris, and Raymond F. Buckley, Jr., all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Janet L. Gandy, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:
Defendant, Ron Tyler, was charged with the offense of possession of less than 200 grams of a substance containing methamphetamine.

This appeal is from the trial court's order granting defendant's motion to suppress evidence. We affirm.

At a preliminary hearing on April 11, 1989, the State presented the testimony of State Trooper David Crackel. Trooper Crackel testified that at approximately 4 p.m. on September 11, 1988, he was directed to the scene of a single-car accident on Funkhouser Road. Defendant, the driver of the vehicle, was unconscious when he was removed from the car by the emergency medical technicians. After defendant was taken by ambulance to the hospital, Trooper Crackel proceeded to examine the vehicle for the purpose of preparing an accident report and inventory. Peering inside the vehicle, Trooper Crackel discovered on the floorboard a "sandwich baggy" with a green leafy substance, which he believed to be cannabis, in it.

Trooper Crackel then proceeded to the hospital to determine the driver's identity. He observed hospital personnel working with the defendant. Defendant's jeans had been cut off and were in a basket beneath the defendant's gurney. Crackel proceeded to examine "the pockets of Tyler's jeans to look for a drivers [sic] license." Crackel reached into each of the pockets, and in one of the pockets he found a small vial, which was later determined to contain methamphetamine. Crackel testified that when he arrived at the hospital neither Tyler's mother nor his wife was there. Crackel did not know whether any of Tyler's other relatives were there before he started examining Tyler's jeans.

At the hearing on defendant's motion to suppress, Crackel testified that when he examined Tyler's jeans, the only clothing Tyler had on was a hospital gown. Crackel had removed the vial from Tyler's jeans before Tyler's mother, Peggy Knight, arrived at the hospital.

Tyler's mother, Peggy Knight, testified that when she was informed that her son was at the emergency room, she telephoned the emergency room to learn her son's condition. Knight testified that she advised the emergency room nurse that she was Tyler's mother and asked what his condition was. The nurse advised Knight that she needed to get to the hospital as quickly as possible. When she arrived at the hospital, Tyler's wife and sister were already there. Knight testified that an officer, who was in the hall, asked her for whom she was looking and when she told him "Ronnie Tyler," he pointed to the defendant's treatment room. Knight entered the treatment room and noticed that Tyler was wearing his trousers. Approximately 10 minutes after Knight was asked to leave the treatment room, Tyler was taken to surgery.

Following the hearing on the motion to suppress, the trial court entered an order granting defendant's motion, finding:

"(a) The search was not incident to an arrest.

(b) The search was not pursuant to consent.

(c) The seizure was not of evidence in plain view.

(d) The search was of an article in which the defendant had a substantial expectancy of privacy.

(e) The search was made without a warrant.

(f) The removal of a vial from a pants pocket and the opening of the vial to examine the contents were not necessary as part of a search for a driver's license."

The State argues that the search was justified because of (1) Trooper Crackel's need to ascertain Tyler's identity, (2) the lack of Tyler's privacy interest in his clothing, and (3) the existence of probable cause to believe the jeans contained contraband.

■■ The fourth amendment to the Federal Constitution guarantees the individual the right to be free from unreasonable searches and seizures. In considering fourth amendment issues, our fundamental inquiry is whether or not the search or seizure was reasonable under all of the circumstances. (*United States v. Chadwick* (1977), 433 U.S. 1, 9, 53 L. Ed. 2d 538, 547, 97 S. Ct. 2476, 2482; *Cooper v. California* (1967), 386 U.S. 58, 59, 17 L. Ed. 2d 730, 732, 87 S. Ct. 788, 789-90; *People v. Bayles* (1980), 82 Ill. 2d 128, 411 N.E.2d 1346.) Generally, unless the trial court's ruling on a motion to suppress is manifestly erroneous, it will not be disturbed. *People v. Industrial Salvage, Inc.* (1985), 136 Ill. App. 3d 1068, 1071, 484 N.E.2d 322, 323.

In support of the argument that the search was justified, the State argues that Trooper Crackel acted reasonably in searching for the defendant's wallet in order to determine his identity. The State cites *People v. Smith* (1969), 44 Ill. 2d 82, 254 N.E.2d 492, in support of its argument. In that case, a police officer examined a wallet which he had taken from a semiconscious shooting victim and discovered an incriminating note. In upholding the admission of the note, the *Smith* court observed that the conduct of the officer in securing the wallet was a reasonable and appropriate police measure. (*Smith*, 44 Ill. 2d at 87, 254 N.E.2d at 495.) The State draws our attention, in particular, to the *Smith* court's unwillingness to find that the officer unreasonably seized the wallet, even though the court found that it was "apparently not necessary to use the wallet to identify the appellant." (*Smith*, 44 Ill. 2d at 87, 254 N.E.2d at 495.) The State contends that although it is arguable whether it was necessary for Trooper Crackel to conduct the search in order to ascertain Tyler's identity, the hold-

ing in *Smith* conclusively establishes that the officer's search was nonetheless reasonable. An examination of the facts in *Smith* demonstrates that the State's position is untenable.

■ *Smith* is distinguished from the instant case in that there the wallet was removed from the defendant at the scene of the offense, whereas here the trooper conducted the search at the hospital over an hour after the accident. In *Smith*, ascertaining the victim's identity by seizing his wallet was justified in that at the time of the search: the victim was still at the scene of the incident; the victim was semi-conscious; a wallet typically contains cards identifying its owner in the event of illness or accident; and a wallet might provide information of value in the handling of the wounded man, *e.g.*, information concerning his blood type, a possible diabetic condition, an inability to tolerate certain medications or anaesthetics, or a religious affiliation. (See *Smith*, 44 Ill. 2d at 87-88, 254 N.E.2d at 495-96.) The officer in the instant case did not have the same need to ascertain the defendant's identity or to determine any of the other information.

■ Here, Trooper Crackel testified that he did not arrive at the hospital until approximately one hour after the accident. When Crackel arrived hospital personnel were already attending to Tyler. In addition, there is a conflict in the testimony presented below as to whether Trooper Crackel already knew the identity of Tyler prior to his search of Tyler's clothing. Although the trial court made no specific finding as to whose testimony was more credible, it did find all issues and controverted facts in favor of the defendant. Courts generally defer to the trial court on questions of testimonial credibility and will draw from the evidence all reasonable inferences in support of the judgment. See *People v. Lagle* (1990), 200 Ill. App. 3d 948, 954, 558 N.E.2d 514, 519.

■ We further note that in *Smith* the court held that, "[t]hough the identification of the appellant was not apparently a problem, the securing of his wallet *to safeguard it* was not unreasonable under the circumstances." (Emphasis added.) (*Smith*, 44 Ill. 2d at 87, 254 N.E.2d at 496.) In the instant case, by the time Trooper Crackel arrived at the hospital, Tyler had been admitted, and there was testimony that his relatives were also there. There is no question that safeguarding of Tyler's property by the police was unnecessary.

■ In addition to the foregoing, we find Trooper Crackel's own testimony persuasive on the proposition that the search was beyond the scope of the officer's stated reason for conducting the search:

"Q. And your reason for going through the jeans was what?
A. To find his drivers [*sic*] license.

Q. Okay. And did you find his drivers [*sic*] license?

A. I don't remember if they were in his jeans or not. I don't think they were, but I couldn't say for sure one way or other, now.

Q. So, did you feel the outside of the pants, or did you just reach directly into the pocket?

A. I felt—reached into the pockets. They were all cut up. I reached into his pockets.

Q. And when you felt a vial, did it feel like a drivers [*sic*] license or not?

A. No, sir, it did not.

Q. But you went ahead and pulled it out of the pant pocket?

A. Yes, sir, just to see what it was."

Based on the foregoing, we cannot accept the State's contention that the evidence was seized as a result of a justified search in order to ascertain Tyler's identity.

The State also contends, relying on *People v. Sutherland* (1980), 92 Ill. App. 3d 338, 415 N.E.2d 1267, that the search was reasonable because Tyler did not have a privacy interest in his clothing which had been removed. In *Sutherland*, the defendant, a robbery suspect, was taken to the hospital for treatment of a gunshot wound. The defendant's clothes were removed, and a policeman obtained them from a security guard. The court affirmed the denial of defendant's motion to suppress. In so holding, the court found that the defendant did not ask or indicate that when his clothing was removed at the hospital it was not to be given to anyone else, nor did the defendant otherwise demonstrate an actual intent to preserve the privacy of his apparel.

In *Sutherland*, there was testimony that it was common practice for police to inventory the clothing of gunshot-wound victims. The hospital security guard testified that in the past he had given the clothing of such victims to the police. The court found that *under the circumstances*, "any subjective expectation of privacy was not of the type 'that society is prepared to recognize as reasonable.' " (Emphasis added.) (*Sutherland*, 92 Ill. App. 3d at 343, 415 N.E.2d at 1271, quoting *Smith v. Maryland* (1979), 442 U.S. 735, 740, 6 L. Ed. 2d 220, 226-27, 99 S. Ct. 2577, 2580.) The instant case does not involve a gunshot-wound victim, and Trooper Crackel was not conducting the search in furtherance of an inventory. Furthermore, there has been no showing that it was common practice for the police to conduct an inventory under facts such as in this case, nor has there been a showing that it was hospital policy to relinquish personal effects to the police.

■■ ■ In order to determine whether the challenged police conduct offends the fourth amendment, we must decide whether defendant had a "reasonable expectation of privacy" with regard to his clothes. (*Terry v. Ohio* (1968), 392 U.S. 1, 9, 20 L. Ed. 2d 889, 899, 88 S. Ct. 1868, 1873; *Katz v. United States* (1967), 389 U.S. 347, 361, 19 L. Ed. 2d 576, 587-88, 88 S. Ct. 507, 516.) Here, there is nothing in the record to indicate that Tyler was physically capable of asking or signalling that he did not want anyone other than hospital personnel or his family to be given his clothing. The State concedes in its brief that Tyler could not have expressed a privacy interest in his pants which had been removed because of his unconscious condition. Although he was injured in the accident, Tyler kept the vial of methamphetamine on his person when he was taken to the hospital. Even though his clothing was removed, it was placed in a basket under Tyler's gurney and, in accordance with hospital policy, was given to Tyler's relatives. Under the facts presented, there exists no justification for the intrusion into Tyler's clothing.

■■ ■ We also reject the State's contention that the officer's conduct was permissible under the doctrine of plain view. That doctrine provides that when an officer in the performance of his duty lawfully discovers evidence within his view, the taking of such evidence does not constitute an unreasonable seizure. (*People v. Bombacino* (1972), 51 Ill. 2d 17, 280 N.E.2d 697; *People v. Berg* (1977), 67 Ill. 2d 65, 364 N.E.2d 880.) As determined above, the officer's search was not justified for the purpose of conducting an inventory, or for ascertaining Tyler's identity. Trooper Crackel, therefore, was not legally authorized to have his hand inside the pockets of Tyler's pants. Trooper Crackel could only discover the evidence after reaching into the pocket. Based on the facts, we do not agree that the plain view doctrine is applicable to this case.

Finally, the State alleges that the search was proper even if Trooper Crackel's sole purpose was to discover evidence of an additional offense. Defendant acknowledges that a warrantless search, as was conducted here, may have been effected by the officer if the search was incident to a lawful arrest. (Ill. Rev. Stat. 1989, ch. 38, par. 108—1.) Defendant argues, however, that in order to uphold a search made pursuant to section 108—1 of the Criminal Code of Procedure of 1963, there must first be a valid arrest of the individual.

■■ ■ The State concedes that Trooper Crackel did not arrest Tyler prior to conducting the search but contends that, since Trooper Crackel had probable cause to arrest Tyler at the time of the search, the search was lawful. There are instances where probable cause ex-

ists for arrest, and where a search and arrest are practically simultaneous, it may be immaterial that the search preceded the arrest. (See *People v. Hall* (1980), 90 Ill. App. 3d 1073, 414 N.E.2d 201; *People v. Jones* (1977), 56 Ill. App. 3d 414, 371 N.E.2d 1093.) However, in order for a search made incident to a lawful arrest, and which precedes an arrest, to be valid, the search must be made immediately prior to the arrest. (*Rawlings v. Kentucky* (1980), 448 U.S. 98, 111, 65 L. Ed. 2d 633, 645-46, 100 S. Ct. 2556, 2564; *Jones*, 56 Ill. App. 3d 414, 371 N.E.2d 1093.) While the record is unclear when Tyler was actually arrested for the instant offense, it is clear that he was not arrested on September 11, 1988. As the search made prior to the arrest cannot be viewed as the type of single transaction evident in *Rawlings, Hall*, and *Jones*, we cannot view the search in the instant case as a lawful search incident to arrest. See *People v. Vollrath* (1981), 95 Ill. App. 3d 866, 870, 420 N.E.2d 760, 763.

For the reasons stated, we affirm the trial court's order granting the defendant's motion to suppress.

Affirmed.

HOWERTON and LEWIS, JJ., concur.