THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* L. C. JONES, Defendant-Appellee.

First District (3rd Division)   No. 77-458

Opinion filed December 28, 1977.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Michael E. Shabat, and John J. Rayman Lieberman, of counsel), for the People.

George Howard, of Chicago, for appellee.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

The defendant was charged with possession of a sawed-off shotgun. (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(7).) The State appeals from an order sustaining the defendant's motion to suppress evidence of the shotgun (Ill. Rev. Stat. 1975, ch. 110A, par. 604(a)(1)), contending that the search of his person was proper.

Although the defendant has not filed a brief as appellee, the issue presented can be decided without the aid of an appellee's brief, and, in view of the recent decision of our supreme court in *McCoy v. Chicago Transit Authority* (1977), 69 Ill. 2d 280, 371 N.E.2d 625, and the need to control violence on the vehicles of the Chicago Transit Authority (CTA), we think this case merits consideration. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493.

During the hearing on the motion to suppress, the defendant testified he boarded a CTA bus at Roosevelt Road between 4 and 5 a.m. on April 5, 1976, gave the driver a valid bus transfer for his bus fare, and sat near the rear of the bus after the driver stamped and returned the transfer. The defendant disclaimed either having an altercation with anyone on the bus or having a conversation with the driver about the bus transfer. He further testified that approximately 15 minutes later, the driver stopped the bus, got off and returned with two police officers. He denied the police told him he was under arrest, and claimed they arrested him only after they opened his coat, searched him and discovered the weapon, which he admitted was in his possession. The defendant said that he boarded the bus even though it originally was traveling north, in a direction opposite to his home, where he wanted to go, because the weather that morning was cool. He testified that he knew the bus would reach its terminus and turn around for its southbound trip, and boarded it then, rather than stand out in the cold on the corner to wait for its return. He denied that he refused to pay the fare after the bus reached the end of the line. He also stated he had money to pay the driver, but said the driver did not ask him for his transfer or tell him to exit the bus, or inform him the transfer was not valid.

John Palaggi, the bus driver, testified that near 79th Street, the defendant entered the bus and handed him a transfer. Palaggi stated he told the defendant the transfer was invalid but the defendant responded, "Well, that is all right," and walked to the rear of the bus. Palaggi also testified that as he drove toward the northern terminus of his route in downtown Chicago, he unsuccessfully tried to alert police in a passing patrol car by flashing the bus lights.

When the bus reached the northern terminus, Palaggi testified that he went to the back of the bus, woke the defendant and told him to get off the bus. He also informed the defendant that he would have to pay

another fare if he wanted to return south. While Palaggi was attempting to use the bus's phone, which did not work, to call for police, the defendant came to the front of the bus and told him, "That ain't going to do you no good." The defendant then returned to his seat at the back of the bus.

Because he was behind schedule, Palaggi then drove his vehicle south on Wabash Avenue. A police squad car which he had alerted by flashing the bus lights then stopped. Palaggi said he informed the officers that he had a disorderly passenger who would not pay his fare or leave the bus. Palaggi pointed to the defendant, who seemed to be asleep, and the police searched him.

The court then questioned Palaggi on his initial failure to remove the defendant from the bus when the defendant presented an invalid transfer, an omission which allowed the defendant to ride downtown. Palaggi replied, "According to the CTA, that is what they want you to do." In response to further interrogation by the court, Palaggi also said that only after the defendant refused to pay his southbound fare did he decide to call the police.

The arresting police officer testified that as he and his partner were driving north on Wabash, they saw Palaggi's CTA bus traveling in the opposite direction, with its bright lights flashing to attract attention. The police then stopped. Palaggi also stopped his bus, got out, and told them he could not remove the defendant, who was sleeping and had not paid his fare. The police and Palaggi entered the bus and the driver pointed out the defendant, who apparently was intoxicated. The officers ordered the defendant to stand, and he did so. When the testifying officer conducted a "pat-down" search of the outside of the defendant's outer garments, he felt a hard object which a further search revealed to be a shotgun. The testifying officer then seized the shotgun. His partner's testimony corroborated this version of the incident.

In granting the defendant's motion to suppress the evidence, the trial court did not say it disbelieved the testimony of the bus driver and police officers. Instead, its ruling was predicated primarily on the driver's testimony that the defendant boarded the bus at 79th Street and rode downtown even though his transfer may have been invalid. The court observed that the defendant had not committed a crime because the bus driver had permitted him to ride on that transfer, thus waiving the right to make a complaint about the illegal ride. Because no crime was committed, the court reasoned, the defendant's subsequent search and arrest were improper.

We do not agree with the trial court's reasoning or conclusion. That Palaggi, the driver, did not attempt to throw the defendant off the bus before Palaggi received police assistance, or attempt to summon the police immediately, or insist more strongly that the transfer the defendant

presented was invalid, does not indicate either Palaggi or the CTA was condoning the defendant's conduct.

■■ The bus driver told the police that the defendant was riding the bus without having paid the required fare. This information indicated the commission of a theft of service. (Ill. Rev. Stat. 1975,. ch. 38, par. 16— 3(a).) The crime the bus driver accused the defendant of committing, then, was a Class A misdemeanor, punishable by a term of imprisonment of up to 1 year. (Ill. Rev. Stat. 1975, ch. 38, pars. 1005—1—14, 1005—5— 2(b)(2).) The information Palaggi gave the police, plus the defendant's apparent intoxication, were sufficient to establish a reasonable inference that the defendant had committed a violation of the law and had been acting in a disorderly manner, and that the police might be in danger of an attack. Accordingly, the "pat-down" search the police officer said he made, and which his partner's testimony confirmed, was proper under the circumstances. *People v. McGowan* (1977), 69 Ill. 2d 73, 370 N.E.2d 537; *People v. Palmer* (1976), 62 Ill. 2d 261, 342 N.E.2d 353.

Further, a police officer is entitled to make a warrantless arrest based on probable cause, and a full search pursuant to such an arrest is proper. (*People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.) The facts justifying such a search incident to arrest need not be sufficient to sustain a conviction, and in deciding the question of probable cause in this context, the courts should make their determinations on the basis of pragmatic considerations of daily life on which reasonable men, not legal technicians, act. *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Faulisi* (1977), 51 Ill. App. 3d 529, 532-33, 366 N.E.2d 1072.

■■ Even if, as the defendant contended, the police made a full search, their actions were proper, as a search incident to an arrest. (*Robinson.*) Although, technically, the police officers here did not arrest the defendant until after their search of his person, they had probable cause to arrest him when they approached him on the bus after the driver's complaint. Their failure to tell the defendant specifically that he was under arrest does not mean that they had no grounds to search him. In this case, where probable cause for an arrest existed independently of what the search produced, that the search preceded the formal arrest is immaterial: the search and arrest were almost simultaneous and should be viewed as a single transaction. *United States v. Squella-Avendano* (5th Cir. 1971), 447 F.2d 575, 583; *Holt v. Simpson* (7th Cir. 1965), 340 F.2d 853, 856.

■■ While it appears that the defendant here was not formally charged with theft, this possible lack of a formal charge is not determinative of the validity of the officers' actions. (*People v. Clark* (1956), 9 Ill. 2d 400, 404, 137 N.E.2d 820, *overruled in part on other grounds in People v. Watkins*

418

(1960), 19 Ill. 2d 11, 166 N.E.2d 433, *cert. denied* (1960), 364 U.S. 833, 5 L. Ed. 2d 59, 81 S. Ct. 57.) The record here shows the existence of ample probable cause to justify a weapons "pat-down" search, or even a full search incident to an arrest, and the trial court erred in concluding that the search of the defendant was impermissible.

Accordingly, the order of the circuit court is reversed, and the cause remanded for further proceedings.

Judgment reversed and remanded.

McNAMARA and McGILLICUDDY, JJ., concur.