THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MACK McCLINTON *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 76-726

Opinion filed April 11, 1978.

James Geis, Ralph Ruebner, and Martin Carlson, all of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Iris E. Sholder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE PERLIN delivered the opinion of the court:

Following a bench trial, defendants, Mack McClinton and Frank McClinton, were found guilty of murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1(a)(1)) and each was sentenced to a term of 14 to 20 years. Defendants appeal from the convictions contending: (1) that they were denied effective assistance of counsel because their attorney also represented a codefendant whose defense was antagonistic to the defendants' alibi defense; (2) that the trial judge improperly denied a motion to suppress a weapon and bullets recovered when defendant Mack McClinton was arrested; (3) that testimony with regard to the registration of the murder weapon was hearsay and was erroneously admitted; (4) that a rifle found in the possession of a codefendant was improperly admitted into evidence; (5) that they were denied due process of law because the State failed to disclose that a State's witness had two criminal convictions which could have been used to impeach the credibility of the witness; and (6) that defendants were not proven guilty beyond a reasonable doubt.

On March 2, 1975, Eddie McKinley was shot and killed in an alley adjoining a vacant lot near the Blue World Lounge in Chicago, Illinois. Defendants were charged, along with Saul Banks, Jr., and John Jones, with the murder. Initially all four defendants were represented by the same attorney. Subsequently, Jones retained his own counsel.

Prior to trial defendants filed a motion to sever their trial from that of Saul Banks. A hearing was held and their attorney advised the court that the defense of Banks was antagonistic to that of defendants. Defendants' alibi defense was that they were at Banks' home at the time of the murder. Banks had told police that the defendants were not at his home on the night of the murder. The trial court granted the motion and severed the trial of defendants from the trial of Banks. Assuming that Banks would have a bench trial and that the defendants and Jones would have a jury trial, the trial court stated that it would proceed simultaneously with both trials.

A second hearing was held prior to trial on a motion to suppress physical evidence filed on behalf of Mack McClinton. The motion sought to suppress two handguns and several bullets found in Mack McClinton's apartment at the time of his arrest on the basis that the arrest was illegal. Officer Barnas testified that he and Officer Bertucci arrested defendant

Mack McClinton in his apartment, that they did not have an arrest warrant and that defendant was not engaged in any illegal activity at the time of the arrest. He testified that they went to arrest defendant because he was identified in photographs as a participant in the shooting. It was not stated who made the identification. Officer Barnas also testified that at the time of the arrest, the officers searched the apartment and recovered numerous .32-caliber bullets and two .32-caliber revolvers. The motion to suppress was denied on the basis that the search was incident to a lawful arrest.

The court proceeded to conduct the bench trials of all four defendants simultaneously. Defendants' attorney agreed to this procedure even though the McClintons' trial had been severed and all four defendants waived trial by jury.

Charlie McKinley, an uncle of the deceased, testified for the State that on March 2, 1975, at approximately 11:30 p.m. he and the deceased were walking to his niece's house, going through a gangway alongside the Blue World Lounge and toward an alley. As they reached the alley, he observed a car at the junction of the alley and the street about nine or ten feet away. The headlights of the car came on, and he saw four men armed with handguns and a shotgun emerge from the car. McKinley stated that the men started shooting at him and his nephew and that he ran. His nephew was shot. He testified that there were lights in the alley and that he looked directly at the headlights but they did not blind him. Although he did not initially give police a description of the men, about 20 hours after the shooting McKinley identified the four men, including defendants, after viewing photographs. McKinley also made a positive in-court identification.

Johnny Fleming testified that at about 10:30 p.m. he was driving near the Blue World Lounge when he observed a car swerve from the curb at a high rate of speed. When the car drove past him in the opposite direction, he saw three men and a shotgun. Fleming testified that the car's headlights were shining somewhat, but not directly, in his face, and that he observed the car and the men's faces for about 30 seconds. In court Fleming identified defendants as being occupants of the car. A statement given to the police by Fleming after the incident was inconsistent in that he told police he did not get a good look at the man in the back seat, and in court he identified the man as being defendant Frank McClinton.

Officer Bertucci testified that he and Officer Barnas arrested defendant Mack McClinton and recovered two handguns and several bullets. He testified that they inventoried the guns, that the serial numbers of both weapons were checked through the firearms registration section, and that one was found to be registered to Mack McClinton. He stated that they then took the handguns to the Crime Lab and obtained receipts for them.

A ballistics expert testified that one of the handguns proved to be the murder weapon. The handguns and bullets were admitted into evidence over the objection of defendants.

Officer Cronin testified that he arrested John Jones and recovered a rifle which was in Jones' possession at the time. The rifle was admitted into evidence over defendants' objection.

Jones testified on his own behalf and presented an alibi, which was corroborated by the testimony of his wife, sister and brother-in-law.

Banks testified on his own behalf stating that he was home on the night of the murder having a party. This was corroborated by six witnesses. Banks also testified that the McClintons were at his party during the evening, but that they had left at around 10 p.m. and did not return until after midnight. He denied telling the police that he did not see the McClintons that evening.

Aritta Banks testified on behalf of the McClintons that both Mack and Frank McClinton were at Banks' party and that Mack did not leave until 2 in the morning and Frank did not leave until 5 in the morning.

Frank McClinton testified that both he and Mack McClinton were at Banks' home during the evening, that they had left at about 10 p.m. for 15 minutes to buy some liquor, but that they returned and remained at the party until after 2 a.m.

Officer Bertucci testified in rebuttal that Banks told an officer that the McClintons were not at his house at all. Banks testified in surrebuttal that he told an officer that the McClintons were not at his house between the hours of 10 and 12.

The court found Mack McClinton, Frank McClinton and Jones guilty of murder but entered a finding of not guilty as to Banks. Defendants filed a motion for a new trial alleging that the State did not comply with discovery in that it did not tender the arrest record of the witness McKinley to their attorney. The record had been given to Jones' attorney and there were some comments in the record indicating that defendants' attorney was aware of the record. After a post-trial hearing, the motion was denied. Jones was granted a new trial on his own motion. Defendants Mack McClinton and Frank McClinton appeal.

Defendants initially contend that they were denied effective assistance of counsel because the defense of Banks was antagonistic to their alibi defense. They argue that their attorney could not effectively support their alibi defense because of his duty to defend the contradictory alibi defense of Banks. The State argues that defendants may not complain on appeal that their attorney was involved in a conflict of interest because they chose their own counsel. Also, during the trial the question of conflict arose, and defendant Mack McClinton stated that he felt that his attorney was acting on his behalf.

■■ It is clear that all defendants are entitled to effective assistance of counsel whether the attorney is appointed or chosen. (*People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441; *People v. Arnold* (3d Dist. 1974), 17 Ill. App. 3d 1043, 309 N.E.2d 89.) A defendant's right to effective assistance of counsel requires that his attorney not represent conflicting interests. (*Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *People v. Kester* (1977), 66 Ill. 2d 162, 361 N.E.2d 569.) A conflict exists where one attorney represents two or more codefendants whose defenses are antagonistic to each other. (*People v. Ware* (1968), 39 Ill. 2d 66, 233 N.E.2d 421; *People v. Barren* (3d Dist. 1975), 32 Ill. App. 3d 78, 335 N.E.2d 779.) Our supreme court stated in *People v. Coslet* (1977), 67 Ill. 2d 127, 133, 364 N.E.2d 67, 70:

> "This court adopted a *per se* conflict-of-interest rule in *People v. Stoval* (1968), 40 Ill. 2d 109, 112, whereby allegations and proof of prejudice are unnecessary in cases where a defense counsel, without the knowledgeable assent of the defendant, might be restrained in fully representing the defendant's interests due to his or her commitments to others, with even closer scrutiny being applied where counsel is appointed for defendant."

■■ The record establishes that the defenses of defendants and of Banks were antagonistic. The defendants alleged that they were at Banks' house at the time of the murder, and Banks testified that they were not there at the crucial hours. As in *People v. Ware*, the attorney "of necessity had to assume a position of ambivalence." (39 Ill. 2d 66, 67.) He was obligated to assist defendants in their defense, and concurrently he had an obligation to assist codefendant Banks. The State argues that defendants were not denied effective assistance of counsel because the trials were severed, and a trial judge when sitting as a trier of fact is presumed to consider only admissible evidence in reaching his decision. However, the technical severance of the trials does not render the assistance of counsel effective in this case, especially since the trials were held simultaneously. The attorney was inherently unable to effectively cross-examine Banks or impeach his testimony in order to support defendants' alibi defense. The attorney's commitment to Banks precluded him from fully representing defendants.

■■ The State argues that defendants knowingly waived their right to representation by counsel who was free from any conflict of interest. Our supreme court in *People v. Stoval* (1968), 40 Ill. 2d 109, 114, held that for there to be a valid waiver, the record must show that defendant was adequately advised of the significance of his attorney's conflict of interest and that he understood how a conflict could affect the attorney's ability to represent him. The record does not establish a waiver in this case. The fact that counsel was retained does not constitute a waiver. Also,

defendant Mack McClinton's statement that he felt his attorney was acting on his behalf does not constitute a knowing waiver because it does not appear that defendant was aware of the significance and possible effect of the conflict. The record does establish that defendants were denied effective assistance of counsel because their attorney represented conflicting interests and that they are entitled to a new trial.

Defendants also contend that the trial judge improperly denied a motion to suppress two handguns and several bullets recovered at the time of the arrest of Mack McClinton. Defendants argue that the arrest was unlawful because it was not established who identified defendants as being participants in the shooting and whether the information was reliable.

■■ There is probable cause for an arrest when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a person of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (Ill. Rev. Stat. 1975, ch. 38, par. 107—2(c); *People v. Robinson* (1976), 62 Ill. 2d 273, 342 N.E.2d 356.) Reasonable cause depends on the totality of facts and circumstances and may be based on evidence not admissible at trial, including hearsay. (*People v. La Bostrie* (1958), 14 Ill. 2d 617, 153 N.E.2d 570, *cert. denied* (1959), 359 U.S. 947, 3 L. Ed. 2d 680, 79 S. Ct. 728; *People v. Colbert* (1st Dist. 1973), 10 Ill. App. 3d 758, 295 N.E.2d 225.) Any assessment of the reasonableness of police conduct should take into consideration the officer's responsibility and duty to maintain order, prevent crime and apprehend criminals, along with the fact that he must act on a quick appraisal of the information before him. *People v. Watkins* (1960), 19 Ill. 2d 11, 166 N.E.2d 433, *cert. denied* (1960), 364 U.S. 833, 5 L. Ed. 2d 59, 81 S. Ct. 57; *People v. Yocum* (3d Dist. 1974), 24 Ill. App. 3d 883, 321 N.E.2d 731.

■■ It is established that once the defendant presents evidence that he was arrested without a warrant and that he was doing nothing illegal at the time of the arrest, the State must produce evidence sufficient to show that the police had reasonable grounds to believe that the accused had committed an offense. (*People v. Martin* (1st Dist. 1977), 46 Ill. App. 3d 943, 361 N.E.2d 595.) The reasonable grounds may be based upon information supplied by another person. (*Martin.*) However, at a hearing on a motion challenging the validity of such an arrest, the State must prove that the information received was reasonable and trustworthy. (*People v. McCray* (1965), 33 Ill. 2d 66, 210 N.E.2d 161, *aff'd* (1967), 386 U.S. 300, 18 L. Ed. 2d 62, 87 S. Ct. 1056.) If the information is supplied by an ordinary citizen, the usual requirement of prior reliability which must be met when police act upon "tips" from professional informers does not apply. *People v. Hester* (1968), 39 Ill. 2d 489, 237 N.E.2d 466, *cert.*

*dismissed* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408; *People v. Miller* (5th Dist. 1976), 36 Ill. App. 3d 542, 345 N.E.2d 1.

■■ The record establishes that the arrest was lawful. The arresting officers had knowledge that a crime had been committed and that the defendant, Mack McClinton, had been identified in a photograph as one of the participants. Since an ordinary citizen made the identification, reliability was not in issue, and the officers had reasonable grounds to believe that defendant committed a crime. Based on the totality of facts and circumstances, the arrest was lawful and the evidence was admissible.

■■ Defendants also contend that the testimony that one of the handguns was registered to defendant, Mack McClinton, was hearsay and should have been excluded. The State argues that although the testimony is technically hearsay, it is admissible under the public records exception to the hearsay rule. Generally, under the public records exception it is the record itself which is admissible and not the oral testimony of a witness concerning the contents of the record. (*Lombard Park District v. Chicago Title & Trust Co.* (2d Dist. 1969), 105 Ill. App. 2d 371, 245 N.E.2d 298; *People v. Ziebell* (1st Dist. 1967), 82 Ill. App. 2d 350, 227 N.E.2d 127.) However, the State cites *People v. Fair* (1st Dist. 1965), 61 Ill. App. 2d 360, 210 N.E.2d 593, in which the admission of oral testimony concerning a public document, a certificate of inspection pasted to a truck weight scale, was held to be proper. In *Fair* it was clearly established that the testifying officer personally examined the document and that it was physically impossible to produce the document in court. The arresting officer in the present case testified that the weapon was checked through the firearms registration section and was found to be registered to defendant Mack McClinton. The officer did not state that he personally checked the records or ascertained the ownership status. The testimony does not indicate that the officer spoke from personal knowledge. Also, there was no showing that the registration record could not be produced in court. The record establishes that the testimony of the officer was hearsay and was improperly admitted into evidence.

Defendants next contend that a rifle found in the possession of codefendant Jones at the time of his arrest was improperly admitted into evidence. Defendants argue that the rifle was not connected to the crime because the witnesses testified that a shotgun, not a rifle, was used.

■■ A weapon may be admitted into evidence against an accused where there is proof to connect it with the crime and the defendants. (*People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112; *People v. Pruitt* (2d Dist. 1974), 16 Ill. App. 3d 930, 307 N.E.2d 142, *cert. denied* (1974), 419 U.S. 968, 42 L. Ed. 2d 184, 95 S. Ct. 232.) It is not necessary to establish that the weapon was the one which was actually used in the particular crime.

(*People v. Tribbett* (1968), 41 Ill. 2d 267, 242 N.E.2d 249; *People v. Gambino* (1957), 12 Ill. 2d 29, 145 N.E.2d 42.) It is sufficient to show that a defendant when arrested was in possession of a weapon suitable for the commission of the crime charged. (*People v. Tribbett; People v. Jones; People v. Lee* (1st Dist. 1975), 27 Ill. App. 3d 712, 327 N.E.2d 574.) In *People v. Ostrand* (1966), 35 Ill. 2d 520, 526, 221 N.E.2d 499, 503, the witness testified that the weapon used was a "snub-nose" and the arresting officer testified that the weapon was not a "snub-nose." The court stated that the discrepancy affected only the probative value of the evidence and not its admissibility. (35 Ill. 2d 520, 526.) On the authority of *Ostrand* the rifle was connected with the crime because it was suitable for the crime charged. The record indicates that the rifle was similar to a shotgun and could have been mistaken for a shotgun. As previously stated, it is not necessary to show that the weapon was actually used in the commission of the crime. *People v. Tribbett.*

■■ The rifle was connected to the defendants because there was evidence that defendants participated in the crime. Once a weapon is connected to an offense and there is evidence that defendants participated in the offense, the weapon may be admitted against defendants even though they did not wield or possess it. (*People v. McCasle* (1966), 35 Ill. 2d 552, 221 N.E.2d 227; *People v. Johnson* (1966), 35 Ill. 2d 516, 221 N.E.2d 497.) Thus, the rifle was connected to both the crime and the defendants and it was not error for the court to admit it into evidence.

Because we have previously determined that defendants must be granted a new trial because they were denied effective assistance of counsel, it is not necessary to determine the other issues presented by defendants. Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

STAMOS, P. J., and BROWN, J., concur.