THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PILAR DE LA FUENTE, Defendant-Appellant.

Third District    No. 78-449

Opinion filed January 7, 1981.

Robert R. Gorbold, of Condon & Bruggeman, of Joliet, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

The defendant, Pilar de la Fuente, appeals from convictions on two counts of armed robbery. He was convicted by a jury for the armed robbery of Senaida Perez. On defendant's motion for severance, he was convicted in a bench trial for the armed robbery of John Stapinski. The defendant, following the convictions, was sentenced to two concurrent terms of 8 years' imprisonment in the Department of Corrections. He was 17 years old at the time of his arrest.

Sixteen-year-old Senaida Perez and her 12-year-old cousin, Guillermo Casillas, were accosted by two men on Liberty Street near the corner of Collins in Joliet at around 7:30 p.m. on March 25, 1978. At first, the two men called to Miss Perez to give them her money. She answered that she had none. The two men then approached the young cousins. One of the men was wearing a black jacket and dark pants and the other a brown jacket, dark pants, and tinted glasses. Both men had on big hats with floppy brims and had mustaches and small beards. The area was fairly well lit. The man with the brown jacket took out a gun and demanded Miss Perez' purse. Her cousin, Guillermo, then ran to the corner grocery store to get help. While the man in the black jacket grabbed for Miss Perez' purse, the man in the brown jacket struck her over the head with the gun. After a struggle, the strap on the purse broke and the man in the black jacket ran down Liberty Street with the purse. The other man again struck Miss Perez on the head with the gun and fled with his companion. Miss Perez was struck a total of four times with the gun. She went to the nearby home of her aunt and called the police. Investigating officers arrived about five minutes later.

Slightly earlier that evening, at about 7:15 p.m., John Stapinski was

driving north on Collins when he heard a call for help. He stopped about two blocks north of the intersection with Liberty Street and got out of his car. He was then approached by two men and a woman. One of the men pointed a gun at Stapinski's forehead and demanded his wallet. Stapinski described the man with the gun as wearing a big hat, dark clothes and of slight build, with a small goatee. After Stapinski handed his wallet to the man, the man struck him with the gun across his left temple and ran away. Stapinski then went to the Joliet Police Station, arriving there at about 7:30 p.m.

Officer Martin Murrin, while riding in his patrol car, received a radio dispatch concerning a purse snatching in the vicinity of Liberty and Collins Streets. As he proceeded to the scene, Murrin heard a second radio dispatch describing an armed robbery which had occurred on Collins Street. A physical description of the robbers was broadcast. They were described as two male Mexicans, approximately 19 or 20 years old wearing black hats and dark clothing. One of the subjects was described as wearing a brown-colored coat and as having a mustache. Another officer, Terrence Mazur, heard the same radio calls. Officer Mazur spotted the defendant and Mario Perales at approximately 7:45 p.m., at a location four to five blocks from where the purse snatching had occurred. Officer Mazur conducted a pat search of the defendant but found no weapons. Officer Murrin then asked the defendant for some identification. The defendant took a brown wallet from his pocket, looked at it, closed it, and tucked it under his arm. He then removed a black wallet from a pocket. Officer Murrin then took both wallets. He looked inside the brown wallet and found it to contain identification belonging to John Stapinski. Officer Mazur radioed the police station and was informed that John Stapinski was there complaining he had been robbed. The officers then informed the defendant that he was under arrest. The two suspects were then brought to the home of Senaida Perez' aunt, where both Miss Perez and her cousin, Guillermo, identified them as the men who had robbed her.

The defendant's first contention on appeal is that the evidence of John Stapinski's wallet should have been suppressed on the grounds that it was illegally seized. Furthermore, the defendant argues, the evidence of defendant's arrest and identification by Miss Perez should have been suppressed because the "show-up" identification was the fruit of the arrest and the arrest was the fruit of the allegedly illegal seizure of the brown wallet.

■■ Normally, searches conducted without judicial warrant are *per se* unreasonable, subject to only a few specifically established and well-delineated exceptions. (*Katz v. United States* (1967), 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507.) One of these recognized exceptions is search incident to a lawful arrest. (*Chimel v. California* (1969), 395 U.S. 752, 23

L. Ed. 2d 685, 89 S. Ct. 2034.) Another exception to the warrant requirement is found in the seizure of an item that is in the "plain view" of a law officer who has a legal right to such a view of the seized object. Both of these exceptions to the normal warrant requirement exist in this case.

A police officer may lawfully seize an article in plain view which, due to the surrounding circumstances, he has probable cause to believe constitutes evidence of criminal activity. The evidence must inadvertently come into the officer's view, and there must exist exigent circumstances which would make it impractical to obtain a warrant. (*People v. Pakula* (1980), 89 Ill. App. 3d 789, 411 N.E.2d 1385, 1389-90.) That an item is in plain view is not sufficient by itself to justify the warrantless seizure of evidence but, in addition, the officer must view the evidence from a position where he has the right to be. Furthermore, the facts and circumstances known to the officer at the time he acts must give rise to the reasonable belief that the item seized constitutes evidence of criminal activity. "The test of reasonableness with respect to search or seizure is whether the facts available to the officer at the moment of seizure or search were such as to warrant a man of reasonable caution to believe the action taken was appropriate (*People v. Caruso, supra; People v. Miezio*, 103 Ill. App. 2d 398, 242 N.E.2d 795): and the conclusions drawn by the officer should be judged upon 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' (*People v. Hester*, 39 Ill. 2d 489, 514, 237 N.E.2d 466, citing *Brinegar v. United States*, 338 U.S. 160, 175.)" *People v. Holt* (1974), 18 Ill. App. 3d 10, 309 N.E.2d 376.

The decisive issue, then, is whether the officer had probable cause to reasonably believe that the wallet was evidence of criminal activity. Chronologically, the reasonableness of the officer's act must be gauged not when he examined the wallet and found the identification of John Stapinski, as such identification was not in his view prior to a search into hidden places, but rather at the time when the wallet was first viewed. (*Cf. People v. Holt* (1974), 18 Ill. App. 3d 10, 309 N.E.2d 376.) The record indicates that, at that earlier moment, the seizure of the wallet was motivated by the officer's knowledge of the following:

A girl had her purse stolen and a man had been robbed by two armed men. The second of the robberies had occurred within 15 minutes of the officer's spotting two suspects at a location four to five blocks from the location of the purse snatching. The radio dispatch informing the officers of the robberies described the perpetrators as two male Mexicans, approximately 19 or 20 years old, wearing black hats and dark clothing. One was described as wearing a brown-colored coat and having a mustache. The defendant is a male Mexican, 17 years old at the time of the incident. He had a mustache and wore a brown jacket and black hat. When asked

to produce identification, he withdrew a brown wallet from his pocket, looked inside, quickly closed it, withdrew a black wallet, and handed the latter to the police officer. At that time, the brown wallet, which defendant had tucked under his arm, was in plain view, with the officer's view of it arrived at by unquestionably lawful means. Under the circumstances, based upon the knowledge the officer then had, a reasonable man would have had probable cause to believe that the brown wallet constituted evidence of a crime. The discovery of the wallet during a street encounter provides the exigent circumstance which made it impractical to obtain a warrant. The seizure of the wallet was, therefore, legal.

■■ The same facts known to the officers at the time the defendant produced the two wallets also would be sufficient to give a reasonable man probable cause to arrest the defendant. A search of the person may be made incident to a lawful arrest. Such a search may be made immediately prior to the arrest, and need not take place subsequent to it. (*Rawlings v. Kentucky* (1980), ___ U.S. ___, ___, 65 L. Ed. 2d 633, 645-46; ___ S. Ct. ___, ___; *People v. Jones* (1977), 56 Ill. App. 3d 414, 371 N.E.2d 1093.) Moreover, the officers' testimony, that they formally placed the defendant under arrest subsequent to learning that the brown wallet belonged to armed robbery victim John Stapinski, does not establish that the arrest had not been effected until that time. It is extremely doubtful that the officers would have allowed the defendant to leave prior to their checking the contents of the wallet and establishing the identity of its owner. Thus, the evidence supports a conclusion that the defendant was already under arrest at the time the wallet was first seized and prior to its being searched. Probable cause to arrest had already been established at the time the defendant displayed two wallets in response to a request for identification. The subsequently obtained information, that the brown wallet belonged to John Stapinski and that John Stapinski had recently been robbed nearby, was merely cumulative and was not necessary for the establishment of probable cause to arrest. *People v. Jones* (1977), 56 Ill. App. 3d 414, 371 N.E.2d 1093.

The defendant next contends that the court erred in admitting into evidence a .22-caliber starter pistol that was found lying in a driveway near the spot where defendant was arrested. Defendant was stopped and arrested as he walked south on the sidewalk in front of 410 Parks Avenue. Fifteen minutes later, Officer Murrin returned to the scene and found the gun lying in the snow in a driveway located just north of 410 Parks Avenue. The gun was found 30 feet from the edge of the street in a residential neighborhood.

At trial, Senaida Perez testified that the gun was similar in appearance to the one with which she was struck on the head. On direct examination, the following colloquy occurred:

"Q: * * * Are you positive that you have seen this particular gun before?

A: Not that one, but one that looks very much like it.

Q: In other words you cannot positively say this is the same gun?

A: Yes.

Q: Okay. Now let me ask you this question, have you seen one similar to it before?

A: That was the gun that the man with the brown jacket had and hit me on the head."

The defendant contends that Miss Perez' words, "not that one," indicate that she affirmatively stated that the gun in evidence was not the one with which she was struck while being robbed. We do not agree that this is necessarily the import of her words. The context indicates that she had merely declined to positively identify the exhibit as "the gun" that was used in the robbery. Her words may indicate that she was not sure that the exhibited gun was the one actually used to rob her, but that she was sure that the proffered weapon is similar in appearance to the one which she observed while being robbed. Because she never had possession of the gun used to rob her, it is virtually impossible that she could have positively identified it. Her testimony that the gun in question was similar to the gun used in the robbery was sufficient to tie the gun to the robbery.

John Stapinski testified at both trials. He testified that the exhibited gun was similar to the gun used to rob him. He described the gun used to rob him as having a four- or five-inch barrel. When asked to estimate the barrel length of the exhibited gun, he estimated it to be about three inches.

Guillermo Casillas testified that the exhibited gun was similar to the one used to rob his cousin, Senaida Perez, but that it was not the same gun because the barrel was different. There was no showing that any of the occurrence witnesses had a familiarity with firearms.

■■ "The general rule is that physical evidence may be introduced into evidence where there is proof to connect the evidence to defendant and the crime. (*People v. Miller*, 40 Ill. 2d 154, 238 N.E.2d 407, *cert. denied*, 393 U.S. 961; *People v. Gonzales*, 40 Ill. 2d 233, 239 N.E.2d 783.)" (*People v. Smith* (1974), 18 Ill. App. 3d 859, 867, 310 N.E.2d 734.) "It is not necessary to establish that the weapon was the one which was actually used in the particular crime." (*People v. McClinton* (1978), 59 Ill. App. 3d 168, 175, 375 N.E.2d 1342.) Where there is evidence indicating that an accused possessed a weapon at the time of the offense, a similar weapon connected with the defendant by its presence in the area at the time of his arrest may be admitted in evidence, even though not identified as the actual weapon used by him in the commission of the crime. (*People v.*

*Smith* (1974), 18 Ill. App. 3d 859, 867, 310 N.E.2d 734.) In *People v. Ostrand* (1966), 35 Ill. 2d 520, 526, 221 N.E.2d 499, the witness testified that the weapon used was a "snub-nosed." The court properly stated that the discrepancy affected only the probative value of the evidence and not its admissibility. In *People v. McClinton* (1978), 59 Ill. App. 3d 168, 375 N.E.2d 1342, the court admitted into evidence a rifle found in the possession of a co-defendant, even though an eye-witness to the crime stated that a shotgun had been used. The record indicated that the rifle was similar to a shotgun and could have been mistaken for a shotgun. The court there held, on the authority of *Ostrand*, that the rifle was connected with the crime because it was suitable for the crime charged. It is, therefore, clear that the starter pistol admitted against defendant Pilar de la Fuente was sufficiently connected with the crime to permit its admission into evidence. The lack of positive identification does not affect the gun's admissibility, but only the probative value of the evidence in the eyes of the jury or judge.

■■ The starter pistol was sufficiently connected to the defendant to be admitted into evidence. The gun was found in a spot where defendant had walked as he was spotted by the police, moments before his arrest. It was found 15 minutes after defendant's arrest at a location some 30 feet from the edge of the street in a residential neighborhood. The gun exhibited no signs of corrosion or other indications that it had been long exposed to the elements, even though it was found in the snow. It was found in a private driveway, not in or very near a public thoroughfare. Therefore, the gun was sufficiently linked to the defendant to allow its admission into evidence. (*People v. Kilgore* (1976), 39 Ill. App. 3d 1000, 1004, 350 N.E.2d 810.) The fact that it was not actually found in the defendant's possession at the time of his arrest was a matter for the jury or judge to consider in weighing the evidentiary value of the gun, at least in indicating the type of gun used by defendant.

The contentions on appeal set forth above referred both to defendant's trial on count I, the armed robbery of Senaida Perez, and his trial on count III, the armed robbery of John Stapinski. The remainder of defendant's contentions of error refer solely to his trial on count I.

■■ The defendant argues that he was deprived of a fair trial because John Stapinski was allowed to testify as to defendant's armed robbery of Stapinski in the defendant's trial for the armed robbery of Miss Perez. Thus, evidence of another crime was presented to the jury. Evidence of criminal acts of misconduct by an accused which are unrelated to the charge are ordinarily inadmissible. (*People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288; *People v. Sanders* (1978), 59 Ill. App. 3d 650, 654, 375 N.E.2d 921.) Evidence of other crimes is objectionable "not because it has no appreciable probative value, but because it has too much." (I Wig-

more, Evidence §194 (3d ed. 1940).) The law distrusts such evidence because it tends to raise too strong an inference that the accused is guilty of the charged crime due to his character as one likely to commit crimes. "And so, as a matter of policy, where evidence has no value beyond that inference, it is excluded. But where the evidence is independently relevant it is admissible as, for example, where it shows motive or intent, identity, absence of mistake or accident, or the existence of a common scheme or design. I Wigmore, Evidence, 3rd ed., sec. 216." (*People v. Lehman* (1955), 5 Ill. 2d 337, 342-43, 125 N.E.2d 506.) Such evidence, however, should not be admitted unless it may be said that its probative value in establishing guilt outweighs its prejudicial effect. (*People v. Butler* (1975), 31 Ill. App. 3d 78, 80, 334 N.E.2d 448.) The balance between the probative value of such evidence and the prejudicial effect upon the jury of its admission is within the sound judicial discretion of the trial court. (*People v. Lonzo* (1977), 47 Ill. App. 3d 939, 944-45, 365 N.E.2d 528.) The court did not abuse its discretion in admitting the evidence of the robbery of John Stapinski. That crime occurred 15 minutes prior to the robbery of Miss Perez. The two robberies occurred within three blocks of one another. Both crimes involved the use of a small handgun, which, in both crimes, was employed as a bludgeon by its wielder. The descriptions of the perpetrators of both robberies were nearly identical. The evidence of the robbery of John Stapinski was relevant in establishing the defendant's identification, presence, intent, knowledge, and design.

The jury was instructed that:

"Evidence has been received that the Defendant has been involved in a crime other than that charged in the indictment. This evidence has been received solely on the issue of the Defendant's identification, presence, intent, design, and knowledge. This evidence is to be considered by you only for the limited purpose for which it was received."

Defendant argues that this instruction was so broad that it allowed the jury to consider the Stapinski testimony for any purpose whatsoever. We do not agree. The evidence clearly establishes the relevancy of Mr. Stapinski's testimony in tending to show the identification, presence, design, intent, and knowledge of the robbers. The armed robbery statute (Ill. Rev. Stat. 1977, ch. 38, par. 18—2) does not prescribe particular mental states for the elements of the offense. Therefore, both knowledge and intent are applicable mental states. (Ill. Rev. Stat. 1977, ch. 38, par. 4—3(b).) The testimony of John Stapinski was properly allowed, and the limiting instruction given the jury was correct and not so broad as to confuse the jury and so invite it to consider the evidence for an improper inference.

■■ The defendant next contends that the court erred in instructing the jury on the theory of accountability. "An accountability instruction should not be given when the evidence establishes that defendant was a principal and not an accessory." (*People v. Lusietto* (1976), 41 Ill. App. 3d 205, 208, 353 N.E.2d 385.) However, "[e]ven slight evidence upon the theory of accountability will justify the giving of the instruction. * * * [T]he fact that defendant might have been guilty of direct participation in the crime does not render the accountability instruction improper if there is also sufficient evidence that he aided another in the commission of the crime." (*People v. Thomas* (1979), 72 Ill. App. 3d 28, 36, 389 N.E.2d 1316.) Senaida Perez testified that both the defendant and Mario Perales were involved in the armed robbery. She testified that both were about the same height, had similarly styled goatees and mustaches, and wore the same type of wide-brimmed floppy black hats. The defendant attempted to raise a defense of mistaken identity as to the person who was holding the gun, and during arguments on jury instructions, defense counsel asserted that there was an issue as to whether defendant or Perales had the gun. There was sufficient evidence to convict the defendant as either a principal or an accomplice, and the instruction was proper.

The defendant next argues that the court erred in refusing to submit to the jury his requested instruction on the included offense of robbery. "Robbery is a lesser offense in the crime of armed robbery. (Ill. Rev. Stat. 197[7], ch. 38, pars. 2—9(a), 18—1 and 18—2). It is a well-settled rule that if there is any evidence in the record which, if believed by the jury, would reduce the crime to a lesser included offense, an instruction defining the lesser offense should be given." (*People v. Willis* (1977), 50 Ill. App. 3d 487, 490, 365 N.E.2d 300.) It has been held that the defendant is entitled to have submitted to the jury any defense which the evidence tends to prove. It is the province of the jury to decide whether or not the accused is guilty of the crime charged, or of a lesser included offense, if there is any evidence to support the lesser rather than the greater crime. (50 Ill. App. 3d 487, 491.) The defendant contends that an instruction on the offense of robbery should have been submitted to the jury, because evidence was introduced tending to show that the gun used in the commission of the robbery of Senaida Perez was a .22-caliber starter pistol incapable of firing bullets. Therefore, argues the defendant, it was properly a jury question whether or not a dangerous weapon was used, and if the jury were to answer this question in the negative, the evidence would tend to support a conviction for simple, *i.e.*, unarmed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—1).

The more recent cases dealing with the question of whether a particular object is a dangerous weapon all refer to the standard established in 1927 by the case of *People v. Dwyer* (1927), 324 Ill. 363, 155 N.E.

316. (See *People v. Skelton* (1980), 83 Ill. 2d 58, 414 N.E.2d 455.) Although the language of that case has often been repeated, we find it rather ambiguous. We quote at length:

"A deadly weapon is an instrument that is used or may be used for the purpose of offense or defense and capable of producing death. Some weapons are deadly *per se*; others, owing to the manner in which they are used, become deadly. A gun, pistol or dirk-knife is itself deadly, while a small pocket knife, cane, a riding whip, a club or baseball bat may be so used as to be a deadly weapon * * * Where the weapon in question and the manner of its use are of such character as to admit of but one conclusion, the question whether or not it is deadly is one of law for the court to determine, but when the character of the weapon is doubtful or the question depends upon the manner of its use it is a question for the jury to determine from a description of the weapon, from the manner of its use and the circumstances of the case." 324 Ill. 363, 365.

It has been uniformly held, following *Dwyer*, that a loaded gun, capable of firing bullets, is a dangerous weapon *per se*. It need not, of course, actually be fired at the victim to be an instrumentality of an armed robbery. Thus certain weapons, such as knives and operative guns, are dangerous as a matter of law whenever they are in the possession of a robber, even when their sole role in the robbery was display, in order to put the victim in fear, or when they played no role in the robbery whatsoever. *People v. Elam* (1972), 50 Ill. 2d 214, 220, 278 N.E.2d 76.

A second category is that group of objects which are not dangerous *per se*, but which are capable of inflicting serous injury. The cases have held that the dangerous character of a pointed fingernail file (*People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164), an unloaded air pistol (*People v. Hill* (1977), 47 Ill. App. 3d 976, 362 N.E.2d 470), an apparently unloaded gas pellet pistol (*People v. Greer* (1977), 53 Ill. App. 3d 675, 368 N.E.2d 996), and .22-caliber starter pistols (*People v. Ratliff* (1974), 22 Ill. App. 3d 106, 317 N.E.2d 63; *People v. Trice* (1970), 127 Ill. App. 2d 310, 262 N.E.2d 276) were matters of fact for the jury to determine. In each of these cases, the dangerous object was used solely for display, with the purpose of putting the robbery victim in fear. However, the reviewing court noted, in each of them, that the object could have been used to cause serious bodily damage to the victim. Thus, the two above-cited jury determinations that .22-caliber starter pistols are dangerous weapons were upheld by the courts of review because such objects could have been used as bludgeons and because they were capable of inflicting serious powder burns. *People v. Ratliff* (1974), 22 Ill. App. 3d 106, 317 N.E.2d 63; *People v. Trice* (1970), 127 Ill. App. 2d 310, 262 N.E.2d 276.

It has recently been established that a third category of objects exists.

A toy gun, made of plastic and light metal, no more capable of causing serious bodily harm than is a man's finger, has been found, as a matter of law, not to be a dangerous weapon. *People v. Skelton* (1980), 83 Ill. 2d 58, 414 N.E.2d 455.

■■ We have before us, in the instant case, an example of a fourth class of objects. In the instant case, there is evidence supporting the proposition that a starter pistol, incapable of firing bullets, was employed in this robbery. Had this object been used solely to produce fear in the victim by its display, the question of whether or not it was, at the time of the robbery, a dangerous weapon would be one for the jury. Had the jury found the starter pistol not to have been dangerous, it might have concluded that the defendant had perpetrated an unarmed robbery. However, had the jury found the starter pistol to have been dangerous, a court of review would uphold that finding because such an object is capable of inflicting serious bodily injury if used as a bludgeon. In the instant case, all of the evidence indicates that the pistol employed in the robbery of Senaida Perez was, in fact, used as a bludgeon. She was struck on the head four times with it during the struggle for her purse. We therefore hold that the weapon employed in this robbery, whether it was a gun capable of firing bullets or merely the starter pistol that the State introduced into evidence, was dangerous *per se* because of the manner in which it was actually used. This holding is consistent with *People v. Dwyer*, which cited approvingly the earlier case of *Hamilton v. People* (1885), 113 Ill. 34, wherein it was held that a hoe, obviously not a dangerous weapon when used for its intended purpose, was "*per se* a deadly weapon" when used to strike the victim of an attempted murderous assault.

Because of the manner in which it was used, the pistol with which the defendant was armed when he robbed Senaida Perez was a dangerous weapon as a matter of law. Therefore, there was no error in denying the defendant's tendered instruction on robbery. There was no evidence that Miss Perez had been robbed by a person or persons not in possession of a dangerous weapon. Under the evidence of this case, the jury had the choice of convicting the defendant of armed robbery or of acquitting him. The jury was properly instructed.

For the reasons stated herein, the two convictions of the defendant for armed robbery and the judgments thereon of the Circuit Court of Will County are affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.