2025 IL App (1st) 231899-U

SIXTH DIVISION
May 9, 2025

No. 1-23-1899

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 CR 0611602 |
| | ) | |
| DAMAREA LAYE, | ) | The Honorable |
| | ) | Michele Pitman, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The judgment of the trial court is affirmed. The evidence was sufficient to support defendant's convictions, and the trial court did not err when it declined to instruct the jury on a lesser-included offense, overruled defense counsel's objection to the prosecutor's statement in closing argument, or sentenced defendant.

¶ 2                                    I. BACKGROUND

¶ 3    A grand jury charged Damarea Laye with armed robbery and aggravated robbery based on an incident that occurred on the afternoon of January 16, 2017, in Dolton, Illinois. Leonardo Smith

and Kendall Lashley were sitting in Smith's mother's car in front of a fast food restaurant when they were robbed at gunpoint of their cell phones, car keys, and several dollars in cash.

¶ 4    Smith and Lashley identified Laye as the offender in police photo arrays. Laye moved to suppress the identifications, arguing that the identification procedures employed were unnecessarily suggestive. Finding no undue suggestiveness, the court denied Laye's motion.

¶ 5    At trial, Jakub Jasnak testified that he owns the fast food restaurant, Maxwell Street Polish (Maxwell's), in Dolton, Illinois. The restaurant is equipped with 16 video surveillance cameras covering the building's interior and exterior that record 24 hours a day, seven days a week. The cameras were functioning properly on January 16, 2017. Jasnak identified the surveillance videos as well as still photos taken from the videos, and testified that they fairly and accurately depicted what the surveillance cameras recorded on January 16, 2017, around 2:50 pm.

¶ 6    Smith testified that on the afternoon of January 16, 2017, he went to Maxwell's with his cousin Lashley and his friend Michael. Smith was driving his mother's car and Lashley was seated in the front passenger seat. After they parked, Michael went inside to get food while he and Lashley remained in the car. He saw three men exit Maxwell's and walk past his car. One was wearing a white jogging suit, and a second was wearing a green bomber jacket with multiple patches; both men had dreads. Smith did not remember what the third man was wearing. The men got into the car next to Smith's and started to drive away. When one of the men rolled down the window and said something to Smith, Smith responded, "We not on that." The car then reversed, and the three men got out of the car and approached Smith's car. The man wearing the jogging suit walked up to the passenger side, where Lashley was seated, and the man wearing the green jacket with patches approached Smith's side of the car. He said to Smith, "Give me all that shit, shorty." The man had a gun inside his jacket pocket, and he pulled it out so that Smith could see it. The man's hand was

2

on the grip and his index finger was on the trigger. He then "brandished" the gun and said to Smith, "If you move, I'm going to smoke your ass." Smith described the gun as silver on the top with a black grip and said it "looked like a Smith & Wesson." He testified that he had seen guns before in "videos and pictures" and was "familiar" with them because he had "been to the range." After the man pulled out the gun, Smith put his hands up and responded, "All I got is my phone and that's it." The man then reached into Smith's car and pockets and took his phone, a few dollars, and his car keys. Smith saw the person in the white jogging suit go through Lashley's pockets and take his phone. A third man took a backpack from the back seat. The men then returned to their car and left. When Michael returned from Maxwell's, Smith used his phone to call 911.

¶ 7    The 911 call was played in open court. Smith told the 911 operator that he was robbed by three men that drove off in a silver Chevy. He said they took his phone, his keys, his cousin's phone and three dollars. He said the man who robbed him had long dreads and was wearing a green jacket with patches on it. He saw the man unzip his coat and pull out a gun and heard him say, "don't move or I pop your ass." Smith said that's why he didn't go anywhere and why he "let that shit go," because he was "not trying to get shot." Smith told the operator there was a second robber on his cousin's side of the car who was tall, with long dreads and a red tattoo along his neck that was "hard not to miss."

¶ 8    Smith went to the Dolton police station just after 10 pm that night to view a photo array. He read and signed a photo advisory form that stated, "[t]he actual suspect may or may not appear in one of the six photos that you will be shown" and indicated that he was "not obligated to make an identification." Smith circled Laye's photo and wrote "I know this is him because of his strong cheekbones and his dreads."

¶ 9    Lashley testified that he went to Maxwell's with his cousin, Smith, and their friend Mike on the afternoon of January 16, 2017. After Mike went inside for food and he and Smith remained outside in Smith's mother's car, he saw three guys and one of them was "staring [him] down" so he looked back. One of the men was wearing a white jogging suit, and another was wearing a green army bomber jacket; both had dreads. Lashley did not remember what the third man was wearing. The three men then got in their car which was parked just to the right of Smith's car. The car backed out and pulled off, but then returned. The man wearing the white jogging suit walked up to the driver's side of Smith's car and asked what they were looking at. Lashley told him "his man[] was looking at me." The man wearing the green army bomber jacket then walked up to the driver's side of the car, and the man in the jogging suit crossed over to the passenger side, where Lashley was seated. The man in the green jacket talked for a minute, and then opened up his jacket and pulled out a gun. Lashley was able to see the handle of the gun, which was black, and said the man took it out for "[long] enough to make us give him [our] phone[s]." He said the man in the green jacket and the man in the jogging suit then searched him and Smith and patted them down to see what they had. They took his phone, as well as his backpack from the back seat, and Smith's phone and keys. The men then got back in their car and drove off.

¶ 10    Lashley went to the Dolton police station around 10:30 pm on the night of the robbery and was presented with a photo array. He circled Laye's photograph and wrote underneath, "Robber was on the driver's side of the car. He was carrying the weapon."

¶ 11    Detective Major Coleman of the Dolton Police Department testified that on January 16, 2017, around 2:50 pm, he responded to Maxwell's to investigate a reported armed robbery. When he arrived on scene, he had a brief conversation with the responding officers and was given a description of a potential offender. He then met with Smith and Lashley, who described one of the

4

offenders as an "average height male black with a dark colored jacket, possibly green with patches on it, and a two-tone hat, and shoulder length dreadlocks." The second offender was described as a "tall male black with a dreadlock hairstyle and a very light colored, possibly white, jogging suit." After Detective Coleman learned that Maxwell's had surveillance cameras covering the interior and exterior of the building, he reviewed the surveillance footage and downloaded it onto a flash drive. He then took snapshots from the surveillance video that captured the suspects' faces and went to the Calumet City Police Department to speak with officers there. He circulated the snapshots and created a BOLO (Be on the Lookout for) bulletin, which contained images of the suspects. The bulletin was circulated to all surrounding suburbs and police departments. When a member of the Calumet City Police Department informed Detective Coleman that he recognized one of the suspects, Coleman went back to the Dolton Police Department and put the suspect's name and date of birth into the law enforcement database system, which generated photos of other individuals with similar physical characteristics. Coleman then created six-person photo arrays using the suspect's photo and five photos of similar individuals generated by the database.

¶ 12     On the night of January 16, 2017, these photo arrays were separately shown to Smith and Lashley by Officer Phil Sheehan, an independent administrator with no knowledge of the case. After Smith and Lashley positively identified Laye as the man who robbed them, Coleman made a number of unsuccessful attempts to locate him. Laye was ultimately arrested on April 6, 2017.

¶ 13     The State admitted clips from the surveillance video footage into evidence and then rested its case. Laye elected not to testify and the defense rested without presenting any evidence.

¶ 14     During the jury instructions conference, defense counsel asked for simple robbery to be given as a lesser-included offense, arguing that the jury could find that Laye was not armed with a gun during the commission of the offense. The State argued in response that the lesser-included

instruction was not appropriate because both eyewitnesses at trial testified that they saw Laye with a gun. The court agreed, finding that "there was never an issue with regard to whether or not the defendant was armed with a firearm from the testimony that has been presented" and that "robbery is not appropriate based on the testimony that was given." It therefore denied defense counsel's request for a lesser-included instruction.

¶ 15 During closing arguments, the prosecutor referenced Laye's statement to Smith, "If you move, I'm going to smoke your ass." The prosecutor argued that "[w]hen [Laye] said that, he's telling them I have a gun and I'm going to shoot you." Defense counsel objected, but the court overruled the objection and instructed the jury that the lawyers' arguments are not evidence.

¶ 16 On April 13, 2022, the jury reached a verdict and found Laye guilty of aggravated robbery, armed robbery, and specifically found that Laye was armed with a firearm during the commission of the offenses.

¶ 17 After trial, defense counsel moved to withdraw based on Laye's *pro se* allegations of ineffective assistance of counsel. A public defender was subsequently appointed for Laye, who filed a motion for a new trial based on ineffective assistance of trial counsel. After hearing testimony from trial counsel, the court denied the motion.

¶ 18 At Laye's sentencing hearing, the State asked for the maximum sentence. It noted that Laye had a prior juvenile adjudication for unlawful use of a weapon, and that he had several instances of misconduct while incarcerated, including exposing himself to a correctional officer and ignoring the officer's orders to stop masturbating as well as possessing a large piece of sharp plexiglass and hiding a plastic shank in his mattress. In addition, the State noted that Laye's conduct on January 16, 2017, threatened to cause serious harm, as evinced by his comment to Smith "If you move, I'm going to smoke your ass." It also argued that as Laye's conduct took place in the middle of an

afternoon in a public area, an enhanced sentence was necessary to deter similar conduct in the future.

¶ 19   Defense counsel asked for the minimum sentence of 21 years based on mitigating factors, including Laye's tumultuous childhood, his history of physical, emotional, and sexual abuse, and his substance use issues.

¶ 20   After hearing arguments from both parties, the court said it thoroughly reviewed the Presentence Investigation Report and "considered all the factors in aggravation and mitigation." Regarding mitigation, it mentioned Laye's age, his limited education, the fact that he had three children, and his history of mental, physical, and sexual abuse. In aggravation, the court found that Laye's threat to "smoke [Smith's] ass" while his hand was on the grip of a firearm "certainly threatened serious harm" and noted that it was "violent to do something like that to someone." The court sentenced Laye to a 25-year term for armed robbery, which included the 15-year firearm enhancement, and to a concurrent 10-year term for aggravated robbery. Laye timely appealed.

¶ 21                                II. ANALYSIS

¶ 22                          A. Lesser-Included Offense

¶ 23   Laye argues that the trial court's refusal to instruct the jury on the lesser-included offense of simple robbery requires reversal because "some evidence" at trial supported such an instruction. Normally, we review a trial court's decision to decline to give a lesser-included offense jury instruction for an abuse of discretion. *People v. McDonald*, 2016 IL 118882, ¶ 42. Here, however, Laye concedes that he forfeited this argument by failing to raise it in his post-trial motion. See *People v. Mohr,* 228 Ill. 2d 53, 65 (2008) (to preserve an instructional error for review, a defendant must object at trial and raise the issue in a posttrial motion). Therefore, he asks us to review for plain error. In doing so, we will reverse only if a clear or obvious error has occurred, and "the

evidence is "so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *People v. Moon*, 2022 IL 125959, ¶ 20 (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2006)).

¶ 24 Laye argues that evidence supported the lesser-included instruction of simple robbery because "no gun was ever recovered, and no gun was visible on the surveillance video that captured the offense." He contends that the video footage constituted "positive proof" that Laye "did not open up his jacket and display a firearm from his inside jacket pocket."

¶ 25 "Where there is conflicting evidence in an armed robbery case as to whether a defendant was armed with a dangerous weapon, an instruction on robbery is appropriate, as armed robbery has all the elements of robbery plus being armed with a dangerous weapon." *People v. Collins*, 265 Ill. App. 3d 568, 583 (1994). "[I]f there is any evidence in the record which, if believed, by the jury, would reduce the crime to a lesser included offense, an instruction defining the lesser offense should be given." *People v. Willis*, 50 Ill. App. 3d 487, 490 (1977). However, instructions on lesser included offenses are not required where "the evidence rationally precludes instructions on the lesser included offense." *People v. Arnold*, 218 Ill. App. 3d 647, 652 (1991).

¶ 26 After reviewing the record, we find that the trial court properly denied Laye's request for an instruction on simple robbery, as no evidence supported that theory. Contrary to Laye's assertion, the fact that the gun is not visible on the surveillance video does not provide "positive proof" that Laye did not have a gun, as the video of the robbery only shows Laye from the back and from a distance. While it shows Laye opening the driver's side door of Smith's car and leaning in, it does not capture Laye from the front, so we cannot tell whether he reached into his jacket and pulled out a gun, as Smith and Lashley testified. Although Laye argues that the video contradicts

Smith's testimony that he "brandished" the gun, Smith clarified that Laye simply "showed [the gun] for a quick second and then put it back." Because nothing in the video contradicts Smith's and Lashley's testimony that they saw a gun in Laye's hand, it does not provide the evidence necessary to support a simple robbery instruction. The fact that a gun was not recovered from Laye when he was arrested three months after the robbery is not evidence that he was unarmed on the date of the robbery either. While "[a] defendant *** is entitled to have the jury consider any legally recognized defense which has some foundation in the evidence however tenuous" (*Willis,* 50 Ill. App. 3d at 491), Laye presented no evidence to refute Smith's and Lashley's testimony that they saw a gun in his hand during the robbery. Therefore, the trial court properly refused to give the lesser-included simple robbery instruction. See *Arnold*, 218 Ill. App. 3d at 652 (finding that the trial court properly refused to instruct the jury on the lesser-included offense of simple robbery where "[a]ll three victims testified that they saw a dark-colored steel handgun at various times during the robbery" and the defendant "did not attempt to dispute or rebut these statements" and presented "no evidence" to question the presence of a gun); *People v. Allen*, 249 Ill. App. 3d 888, 891 (1993) (finding that the trial court "correctly viewed the evidence presented as rationally precluding the finding of the lesser charge of simple robbery" where a victim testified that she saw a gun from a distance of less than one foot and there was "no evidence presented to contradict the victim's testimony"); *People v. Reynolds*, 116 Ill. App. 3d 328, 338 (1983) (finding that "[l]ack of any evidence contrary to proof that there was a gun[] justified the trial court's refusal to give the [lesser-included] instruction" where "[a]ll the witnesses stated that defendant used a gun, with the only conflict in the testimony being as to how much of the gun they saw"). *Cf. Willis,* 50 Ill. App. 3d at 491 (finding that the trial court erred when it refused to instruct the jury on simple robbery because the defendant testified at trial that he did not have a weapon).

¶ 27     Because we find that the trial court did not err when it denied Laye's request for a lesser-included instruction, we need not address his claim that trial counsel was ineffective for failing to preserve the issue for appellate review by including it in a post-trial motion.

¶ 28                                B. Sufficiency of the Evidence

¶ 29     Laye argues that the State's evidence was insufficient to prove that he was armed with a firearm during the commission of the robbery. When reviewing the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *People v. Martin*, 2011 IL 109102, ¶ 15. We apply all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 278 (2004)), and will not substitute our judgment for that of the trier of fact, because it is responsible for determining the credibility of witnesses, weighing the evidence, and drawing all reasonable inferences therefrom. *People v. Siguenza-Brito,* 235 Ill. 2d 213, 228 (2009); *People v. Brown*, 2013 IL 114196, ¶ 48. We will not reverse a defendant's conviction unless the evidence is so improbable or unsatisfactory as to raise a reasonable doubt as to defendant's guilt. *People v. Willer,* 281 Ill. App. 3d 939, 948 (1996).

¶ 30     Laye argues that the evidence was insufficient to prove that the weapon allegedly used was "a genuine firearm rather than a replica." Although he concedes that "Illinois case law does allow proof of a 'firearm' based on the testimony of an eyewitness," he argues that the State failed to "provide sufficient facts to allow one to objectively conclude that the object used in the robbery meets the statutory definition of a firearm."

¶ 31     To sustain a conviction for armed robbery, the State must prove that the weapon used was a firearm, which is defined in section 1.1 of the Firearm Owners Identification Card Act (Act) as

"any device *** designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas." 430 ILCS 65-1.1 (West 2020). The Act expressly excludes certain types of guns, including paintball guns, signal guns, BB guns, and antique guns. *Id.*

¶ 32     Viewing the evidence in the light most favorable to the prosecution, we find it was sufficient to prove that Laye was armed with a firearm as defined by the Act during the commission of the robbery. Both Smith and Lashley testified that they saw Laye holding a gun during the commission of the robbery, and their descriptions of the gun were consistent: Smith described the gun as "silver at the top with a black grip," and Lashley said the handle of the gun was black. In addition, Smith testified that the gun "looked like a Smith & Wesson," and said he was "familiar" with guns because he had "been to the range" in the past and had seen guns in "videos and pictures." Based on this testimony, we find that a rational trier of fact could have found beyond a reasonable doubt that Laye possessed a firearm as defined by statute. See *People v. Wright,* 2017 IL 119561, ¶¶ 9, 12, 77 (holding that the evidence was sufficient to support defendant's conviction for armed robbery because one witness testified that he saw what looked like a black automatic gun tucked into codefendant's pants and said he was "100% sure" the gun was real because he had experience firing such guns in the past and a second witness testified that he observed the handle of a gun and believed it was a 9 millimeter pistol because he had "seen guns before"); see also *People v. Clifton,* 2019 IL App (1st) 151967, ¶¶ 38-39 (finding "sufficient evidence that the nature of the firearm was proven beyond a reasonable doubt" even though no gun was recovered where a witness testified that the gun, which was just an inch from his face, was "black, a revolver, and either a .32 or a .38 caliber" and said he had personal experience with that caliber of gun).

¶ 33                    C. Prosecutorial Misconduct

¶ 34　Laye argues that he was deprived of a fair trial when the prosecutor said during closing argument that Laye's statement to Smith – "I'm going to smoke your ass" – meant "I'm going to shoot you" because no witness testified as to what this phrase meant. He concedes that he failed to preserve this issue by failing to raise it in his post-trial motion, but asks us to review for plain error. Again, under plain error, we are required to reverse only if a clear or obvious error has occurred, and the evidence is "so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process." *Moon*, 2022 IL 125959, ¶ 20 (citing *Herron*, 215 Ill. 2d at 186-87).

¶ 35　A defendant "faces a substantial burden in attempting to achieve reversal of his conviction based upon improper remarks made during closing argument" (*People v. Moore,* 358 Ill. App. 3d 683, 693 (2005)), because prosecutors are afforded "wide latitude" in closing argument. *People v. Wheeler,* 226 Ill. 2d 92, 123 (2007). They may "comment on the evidence presented at trial, as well as any fair, reasonable inferences therefrom, even if such inferences reflect negatively on the defendant." *People v. Cook*, 2018 IL App (1st) 142134, ¶ 61; *People v. Williams*, 2022 IL 126918, ¶ 44. We review a prosecutor's closing argument as a whole, and will reverse only if the prosecutor's improper remarks "constituted a material factor in a defendant's conviction." *Wheeler,* 226 Ill. 2d at 123.

¶ 36　Here, the prosecutor referenced Laye's comment to Smith–that he was "gonna smoke [his] ass"–and argued that "[w]hen he said that, he's telling them I have a gun and I'm going to shoot you." Laye contends that the prosecutor's comment cannot be characterized as a reasonable inference from the record because "there was no testimony from any other witness about what this phrase meant." However, we find the prosecutor's comment was a reasonable inference from the

evidence presented at trial. Smith testified that after Laye said, "If you move, I'm going to smoke your ass" and pulled a gun out of his jacket, he put his hands up and allowed Laye to take his phone and other possessions. And in his call to 911, Smith told the operator that Laye's verbal threat was the reason he didn't move and that he "let that shit go," because he was "not trying to get shot." Based on this evidence, we find that the prosecutor's comment was not improper.

¶ 37    Even assuming the comment was improper, the court's instruction, which reminded the jury that the lawyers' arguments are not evidence and was given immediately after defense counsel's objection, sufficed to cure any possible prejudice. See *People v. Green,* 2017 IL App (1st) 152513, ¶ 98 ("A trial court's instructions that closing arguments are not evidence protect defendant against any prejudice caused by improper comments during closing arguments."); *People v. Taylor,* 166 Ill. 2d 414, 438 (1995) ("The jury is presumed to follow the instructions that the court gives it.")

¶ 38    Because we find no error based on the prosecutor's comment during closing argument, we need not address Laye's claim that trial counsel was ineffective for failing to preserve the issue for appellate review by including it in a post-trial motion.

¶ 39                                    D. Double Enhancement

¶ 40    Laye argues that he was deprived of a fair sentencing hearing because the court "improperly considered conduct inherent in the offense as aggravation." Laye admits that he forfeited this argument by failing to bring it to the attention of the trial court, so he again asks us to review for plain error.

¶ 41    Although the trial court has broad discretion when imposing a sentence, it may not consider an element of the offense as an aggravating factor. *People v. Phelps,* 211 Ill. 2d 1, 11-12 (2004); *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992) (a single factor cannot be used both as an element

13

of an offense and as a basis for imposing a "harsher sentence than might otherwise have been imposed"). This "dual use of a single factor is often referred to as a 'double enhancement.' " *Phelps,* 211 Ill. 2d at 12 (quoting *Gonzalez,* 151 Ill. 2d at 85). However, "it is proper for the sentencing body to consider the degree of harm threatened as an aggravating factor in imposing a sentence for armed robbery." *People v. Burge*, 254 Ill. App. 3d 85, 89 (1993). This is true even though "threatened harm is implicit in the offense" (*People v. Spicer,* 379 Ill. App. 3d 441, 468 (2007)), because the trial court's sentence "must be based on the particular circumstances of the case, including *** the seriousness of the offense." *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 64; see also 730 ILCS 5/5-5-3.2(a)(1) (West 2020) (setting forth aggravating factors the trial court "shall" consider when determining the appropriate sentence, including whether "defendant's conduct caused or threatened serious harm").

¶ 42    To determine whether a trial court based a defendant's sentence on proper aggravating and mitigating factors, we "consider the record as a whole, instead of relying on a few words and statements made by the trial court." *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 125 (quoting *People v. Dowding,* 388 Ill. App. 3d 936, 943 (2009)). Reversal is required only if a sentencing judge relies on an improper aggravating factor in sentencing. *People v. Dowding,* 388 Ill. App. 3d 936, 945 (2009).

¶ 43    This court addressed a similar issue in *Hibbler,* 2019 IL App (4th) 160897. There, the defendant was convicted of armed robbery, and at his sentencing hearing, the trial court noted that his conduct "threatened serious harm; not only to the individuals in the store, when [his] gun was pulled out and pointed *** but [to] the entire community." *Id*. ¶¶ 18, 39. Defendant argued on appeal that the trial court reversibly erred when it considered his pointing a gun at people during the robbery as an aggravating factor, and that his actions "created no more than the 'typical risk of

harm.' " *Id*. ¶ 62. This court disagreed, and found that the trial court properly considered defendant's conduct as an aggravating factor because "defendant's pointing a gun directly at [the victims] clearly created a risk of harm much greater than the minimal threat necessary to commit the bare offense." *Id*. ¶¶ 67, 70. It reasoned that "[a]nything and everything beyond the main conduct necessary for the defendant to be found to have engaged in criminal behavior is entirely appropriate for a sentencing court to consider." *Id*. ¶ 71.

¶ 44    In *People v. Davis,* 252 Ill. App. 3d 812, 815-16 (1993), this court similarly found no error when the trial court considered defendant's conduct as an aggravating factor when sentencing him for armed robbery. The defendant argued that the trial court reversibly erred by considering that his conduct threatened serious harm because "the threat of serious harm is implicit in the offense of armed robbery," but this court disagreed. *Id*. at 814-15. It noted that "the threat of *serious* harm is not implicit in every armed robbery," as it could be committed by a defendant "walking into a store, momentarily showing the clerk a gun *** and demanding money" or "as happened here, by jumping over a convenience store counter, holding a loaded pistol to the clerk's head, and making off with the store's receipts." *Id*. at 814 (emphasis in original). It reasoned that because the "latter situation clearly encompasses a greater threat of serious harm," it was proper for the trial court to consider defendant's conduct as an aggravating factor. *Id.* at 815-16.

¶ 45    After reviewing the record here, we conclude that it was not improper for the trial court to consider Laye's conduct as an aggravating factor during sentencing. Although Laye argues that this was a "run-of-the-mill armed/aggravated robbery during which [he] did not fire his gun, and never even took it all the way out of his jacket," the court noted that Laye threatened to "smoke" Smith while his finger was on the trigger of a firearm if Smith did not give up his possessions. The court found that Laye's words coupled with his actions "certainly threatened serious harm" and

15

made this a "violent" and "serious offense." And because trial courts are required to consider whether a defendant's conduct "caused or threatened serious harm," and defendant's conduct here – threatening to "smoke" Smith if he moved while holding a firearm – goes beyond the conduct necessary to commit the offense of armed robbery, we find no error on the part of the trial judge. Therefore, we need not consider Laye's ineffective assistance of counsel claim.

¶ 46                                    III. CONCLUSION

¶ 47    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 48    Affirmed.